# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

RHONDA JONES *et al.*,

    Plaintiffs,

  v.

VICTOR HILL *et al.*,

    Defendants.

CIVIL ACTION

NO. 1:20-CV-2791-ELR-CCB

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs respectfully move the Court under Rule 65(a) of the Federal Rules of Civil Procedure to enter a preliminary injunction requiring Defendants to take steps to protect Plaintiffs and putative class members from being infected with the virus that causes COVID-19.

A preliminary injunction is granted when (1) the plaintiff is likely to succeed on the merits of his or her claims; (2) the plaintiff would suffer irreparable harm in the absence of an injunction; (3) the harm suffered by the plaintiff absent an injunction would exceed the harm that the injunction would cause the defendant; and (4) an injunction would not disserve the public interest. *See Lebron v. Sec'y, Fla. Dep't of Children and Families*, 710 F.3d 1202, 1206 (11th Cir. 2013). As set forth in the attached brief and exhibits, Plaintiffs meet the requirements for a

preliminary injunction ordering relief under 42 U.S.C. § 1983; the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12133; the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*; and 28 U.S.C. §§ 2241 and 2243.  Specifically, Plaintiffs respectfully request that the Court enter an order with the following terms:

1. Defendants shall create and file with the Court reasonably specific and detailed written plans—developed in consultation with the Georgia Department of Public Health and/or a qualified medical or public health expert in preventing and mitigating the spread of infectious diseases—for addressing the following matters:

    A. Educating detainees, staff members, contractors, and/or vendors about COVID-19, including symptoms, the importance of social distancing and frequent hand washing, the proper use of personal protective equipment, and other appropriate measures to prevent or mitigate the spread of the virus that causes COVID-19, with this education continuing on a regular and as-needed basis as more information becomes available about the virus;

    B. Screening detainees, staff members, contractors, vendors, and/or visitors to the jail for symptoms of COVID-19 upon entry to the jail;

C. Maintaining an adequate supply of COVID-19 tests and administering them to (1) all individuals who are booked into the jail; (2) a random, representative sample of all detainees and staff members at least once every 14 days; and (3) all detainees, staff members, contractors, and/or vendors suspected of being infected with the virus that causes COVID-19;

D. Responding promptly and effectively when detainees report experiencing symptoms consistent with COVID-19;

E. Detecting, monitoring, documenting, and quarantining or isolating suspected or known cases of COVID-19 among detainees or staff members, including but not limited to taking reasonable steps to identify persons within the jail who have been in contact with a person who has tested positive for or exhibited symptoms of COVID-19;

F. Ensuring that detainees known or suspected to have COVID-19 do not interact with detainees who are not known or suspected to have COVID-19;

G. Creating, posting, and implementing schedules for thorough cleaning and sanitizing of cells, common areas, and objects

used by a person known or suspected to have COVID-19;

H. Facilitating at least six feet of distance between detainees and all other persons during all out-of-cell jail operations, including free time, recreation time, sick call, pill call, meal distribution, transport to video court and other group activities;

I. Reassigning detainees within the jail facility as appropriate to maximize the number of detainees assigned a standard bed to sleep in and minimize the number of detainees required to sleep on the floor;

J. Maintaining and providing to detainees, as appropriate, adequate facilities for frequent hand washing, and adequate supplies of personal hygiene items, including soap, hand sanitizer, tissue paper, paper towels, and toothpaste;

K. Maintaining, using, and providing to detainees adequate cleaning supplies for cleaning cells, common areas, and fixtures in the jail, including chemical solutions that are effective against the virus that causes COVID-19;

L. Creating, posting, and adhering to schedules, and reminding detainees why and how to clean using issued cleaning

materials;

M. Maintaining and providing to detainees adequate supplies of personal protective equipment and similar items, including clean and serviceable face coverings, N95 or equivalent masks, gloves, face shields, and/or protective outer garments effective to prevent the spread of the virus that causes COVID-19;

N. Creating, posting, and adhering to schedules to clean objects that are frequently touched, including door handles, light switches, sink handles, countertops and tabletops, toilets, toilet handles, recreation equipment, kiosks, telephones, and showers;

O. Providing adequate clothing and laundry service to detainees;

P. Maintaining and administering the seasonal influenza vaccine to all detainees and individuals booked into the jail who agree to be vaccinated;

Q. Providing adequate, additional protective measures for all detainees performing work assignments in the jail;

R. Providing adequate, additional protective measures for all detainees who are members of the Medically Vulnerable

Subclasses, as defined in paragraphs 189 and 194 of Plaintiffs' complaint (Doc. 1);

S. Ensuring that detainees, including those who cannot easily access a kiosk, have ready access to means of reporting medical problems and unsafe conditions of confinement, including, but not limited to, access to grievance and sick call systems;

T. Documenting and monitoring the performance of all COVID-19 prevention and mitigation measures in the jail; and

U. Educating detainees about COVID-19 quarantining and other protective measures to take upon release to the community.

2. Plaintiffs shall file with the Court, within three days of Defendants' filing of the written plans discussed above, written responses to Defendants' plans identifying any areas in which Defendants' proposed response is alleged to be insufficient to prevent irreparable harm to detainees. For any matter on which Plaintiffs disagree with the Defendants' proposed remedial plan, Plaintiffs shall propose reasonably specific and detailed substitute measures.

3. The Court will consider the parties' submissions and will thereafter enter a renewed preliminary injunction that is narrowly drawn, extends no further than necessary to correct the harm the court finds requires preliminary relief, and is

the least intrusive means necessary to correct that harm. *See* 18 U.S.C. § 3626(a)(2). Within 30 days of the Court's entry of the renewed preliminary injunction, and every 30 days thereafter, Defendants shall file with the Court and serve on Plaintiffs a status report identifying the jail's detainee population, the number of active and recovered COVID-19 cases that have been identified in the jail, and Defendants' efforts to comply with each provision of the preliminary injunction. Within 7 days of each status report filed by Defendants, Plaintiffs may file a response.

    4.     Defendants shall provide to the Court and Plaintiffs' counsel records sufficient to show the following information, and shall provide updated versions of these documents to the Court and Plaintiffs' counsel periodically, and no less than every seven days, for the duration of a preliminary injunction order:

        A.    The names, reasons for detention, incarceration dates, housing assignments, dates of birth, and bond amounts (if applicable) for all current Clayton County Jail detainees;

        B.    The names and relevant medical conditions of all detainees who are members of the Medically Vulnerable Subclasses, as defined in paragraphs 189 and 194 of Plaintiffs' complaint.

C. The names of all Clayton County Jail detainees who are eligible for earned-time credit, home confinement, and/or other forms of discretionary release from the jail under the Sheriff's control; and

D. For individuals held on one or more bond orders, Defendants shall identify those individuals who would be eligible immediately for release if they paid the applicable bond amounts.

5. Defendants shall create and file with the Court within seven days of a preliminary injunction order a reasonably specific and detailed written plan by which Defendants or their designees will review each detainee eligible for discretionary release by the Sheriff and determine whether to grant discretionary release to each eligible detainee.

6. To further aid the Court's evaluation of whether release and/or enlargement is appropriate relief for Plaintiffs and class members' constitutional and irreparable injuries, Defendants shall create and file under seal with the Court within seven days of the date of a preliminary injunction order a list of all members of the Medically Vulnerable Subclasses that Defendants deem unsuitable for

release under any circumstances. The list must describe the asserted reason with reasonable specificity and identify the evidentiary basis for the asserted reason.

7. The parties shall jointly create and file under seal with the Court within 14 days of a preliminary injunction order a list identifying (a) all members of the Medically Vulnerable Subclasses that the parties agree are suitable for release by this Court; and (b) all members of the Medically Vulnerable Subclasses for whom the parties cannot reach an agreement as to the suitability of release, along with a concise statement explaining the bases of the parties' disagreement.

8. Following receipt of the parties' submissions pursuant to paragraphs 6 through 9, the Court will issue further orders setting forth a process to determine whether the Court must release certain class members under 42 U.S.C. § 1983, 28 U.S.C. §§ 2241 and 2243; or under the Americans with Disabilities Act and Rehabilitation Act, in order to ensure those persons are not in unreasonable risk of infection from COVID-19.

## CONCLUSION

The Court should grant a preliminary injunction and writ of habeas corpus.

Respectfully submitted,

/s/ Jeremy Cutting

| | |
|---|---|
| Kosha S. Tucker | Sarah Geraghty |
| Ga. Bar No. 214335 | Ga. Bar No. 291393 |
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF GEORGIA | Jeremy Cutting |
| | Ga. Bar No. 947729 |
| P.O. Box 77208 | Ryan Primerano |
| Atlanta, GA 30357 | Ga. Bar No. 404962 |
| (678) 981-5295 | SOUTHERN CENTER FOR HUMAN RIGHTS |
| ktucker@acluga.org | 60 Walton Street, N.W. |
| | Atlanta, GA 30303 |
| Stephen L. Pevar | (404) 688-1202 |
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION | sgeraghty@schr.org |
| 765 Asylum Avenue | Brandon Buskey |
| Hartford, CT 06105 | Robert W. Hunter |
| (860) 570-9830 | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |
| spevar@aclu.org | 125 Broad Street |
| | New York, NY 10004 |
| David C. Fathi | (212) 284-7364 |
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION | bbuskey@aclu.org |
| 915 Fifteenth Street, N.W., Seventh Floor | |
| Washington, DC 20005 | |
| (202) 548-6603 | |
| dfathi@aclu.org | |

*Counsel for Plaintiffs*

July 27, 2020

## CERTIFICATE OF COMPLIANCE

      I certify that this document has been prepared in compliance with Local Rule 5.1C using 14-point Times New Roman font.

/s/ Jeremy Cutting

July 27, 2020

## CERTIFICATE OF SERVICE

      I certify that I filed the foregoing using the Court's CM/ECF system, which will send notification of filing to all counsel of record.

/s/ Jeremy Cutting

July 27, 2020