IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RHONDA JONES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | FILE NO. 1:20-CV-02791-JPB |
| | ) | |
| VICTOR HILL, in his official capacity as | ) | |
| Sheriff of Clayton County, Georgia, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

SUBMITTED BY:

Jack R. Hancock
A. Ali Sabzevari
Jacob W. Loken
FREEMAN MATHIS & GARY, LLP
661 Forest Parkway, Suite E
Forest Park, GA  30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)

Attorneys for Defendants Victor Hill, Roland Boehrer, Terrance Gibson, Kevin Thomas, and Maurice Johnson

## **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................1

II.    ARGUMENT AND CITATION OF AUTHORITY ............................... 2

    A.    The Sheriff and His Employees in Their Official Capacities are
          Entitled to Eleventh Amendment Immunity ....................................... 2

    B.    Official Capacity Claims Against Defendants Boehrer, Gibson,
          Thomas, and Johnson Are Subject to Dismissal as Being Duplicative
          of Claims Against Sheriff Hill............................................................ 4

    C.    Plaintiffs' § 1983 Claims Are Subject to Dismissal Under the PLRA
          ............................................................................................................ 5

          1.  Legal Standard on a Motion to Dismiss Under the PLRA............. 5

          2.  Plaintiffs Must Exhaust Administrative Remedies Before Filing
              § 1983 Claims................................................................................ 6

          3.  Plaintiffs Failed to Exhaust Administrative Remedies Before
              Filing § 1983 Claims ..................................................................... 8

          4.  Plaintiffs Failed to Follow the PLRA's Required Procedure to
              Obtain an Inmate Release Order .................................................. 13

    D.    Plaintiffs Lack Standing to Bring this Lawsuit Seeking Injunctive
          Relief ................................................................................................ 14

          1.  Plaintiffs Do Not Adequately Allege an Injury in Fact ............... 14

          2.  Plaintiffs Have Not Adequately Alleged Traceability
              and Redressability Because They Did Not Sue CorrectHealth,
              LLC................................................................................................ 16

E.    Plaintiffs' Habeas Claims Are Subject To Dismissal ....................... 18

    1.  Plaintiffs Have Not Stated a Claim for Habeas Relief Because Their Claims Relate to Conditions at the Jail and Not the Cause or Duration of Their Detention...................................................... 18

    2.  Plaintiffs' Habeas Claims Must Be Dismissed Because Plaintiffs Have Not Exhausted Available State Court Remedies ............... 20

F.    Plaintiffs Fail to State A Claim Under Title II of The ADA or Section 504 of the RA ....................................................................... 21

G.    Plaintiffs' "Unconstitutional Punishment" Claim in Count I is Subject to Dismissal For Failure to State a Claim ............................ 22

III.   CONCLUSION........................................................................................ 25

## I.   <u>INTRODUCTION</u>

This is a civil rights class action lawsuit filed pursuant to 42 U.S.C. §§ 1983 and §12101, 28 U.S.C. § 2241, and 29 U.S.C. § 794(a) by Plaintiffs Rhonda Jones, Randolph Mitchell, Michael Singleton, and Barry Watkins ("Plaintiffs"), who all either are or were incarcerated at the Clayton County Jail (the "Jail"). (Doc. 1, pp. 5–6.) Plaintiffs seek preliminary and permanent injunctive relief against Defendants Victor Hill, Roland Boehrer, Terrance Gibson, Kevin Thomas, and Maurice Johnson ("Defendants"), in their official capacities, for the release or transfer of Plaintiffs and other inmates, for the mitigation of the alleged conditions in the Jail, and to require "safe and sanitary" conditions of confinement in the Jail. (<u>Id.</u>, p. 109.) Plaintiffs also seek an issuance of a writ of habeas corpus, and an award of attorney's fees. (<u>Id.</u>) The relevant allegations in this matter are regarding COVID-19 and the Jail. (<u>Id.</u>)

Plaintiffs filed their complaint on July 1, 2020.  (Doc. 1.)  On July 27, 2020, Plaintiffs filed a motion for preliminary injunction (Doc. 19), a motion to expedite hearing on the preliminary injunction (Doc. 20), and a motion to expedite discovery (Doc 21).  Defendants intend to respond to these motions separately and show that the conditions at the Jail are <u>not</u> what Plaintiffs portray and significant mitigation protocols are underway to combat COVID-19.   However, as shown below, Plaintiffs' claims are subject to dismissal for several reasons without the Court

needing to reach Plaintiffs' motion for a preliminary injunction, hold an evidentiary hearing, or allow for expedited discovery.

First, Defendants are entitled to Eleventh Amendment Immunity. Second, Plaintiffs' claims against employees of the Sheriff in their official capacities are redundant and subject to dismissal. Third, Plaintiffs failed to exhaust their administrative remedies at the Jail prior to filing this lawsuit as required by the Prison Litigation Reform Act ("PLRA"). Fourth, Plaintiffs lack standing to bring this lawsuit because their allegations of future injury are speculative and they failed to sue the medical provider at the Jail, CorrectHealth, LLC, which is a necessary party. Fifth, Plaintiffs have not stated a claim for habeas relief because their claims relate to alleged conditions at the Jail and not the cause or duration of their detention, and Plaintiffs have not exhausted all available state court proceedings before seeking habeas relief. Finally, Plaintiffs' allegations fail to state a claim under the ADA or RA, and their unconstitutional punishment claim in Count I is not a proper claim. For these reasons discussed in detail below, Defendants ask that the Court grant their motion and dismiss Plaintiffs' complaint in its entirety.

## II.   ARGUMENT AND CITATION OF AUTHORITY

### A.   The Sheriff and His Employees in Their Official Capacities are Entitled to Eleventh Amendment Immunity

"The Eleventh Amendment protects a State from being sued in federal court without the State's consent." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003).

"To receive Eleventh Amendment immunity, a defendant need not be labeled a 'state officer' or 'state official,' but instead need only be acting as an 'arm of the State,' which includes agents and instrumentalities of the State." Id. A sheriff "functions as an arm of the State . . . when promulgating policies and procedures governing conditions of confinement at the [county jail]." Purcell v. Toombs Cnty., 400 F.3d 1313, 1325 (11th Cir. 2005). The Eleventh Amendment thus precludes a plaintiff from suing a sheriff when he acts as an arm of the State. Purcell, 400 F.3d at 1325. The same preclusion applies to deputies sued in their official capacities. Scott v. Mercier, 268 F. App'x. 872, 873 (11th Cir. 2008); Scruggs v. Lee, 256 F. App'x. 229, 231-232 (11th Cir. 2007). Under the Ex parte Young exception to Eleventh Amendment immunity, however, prospective injunctive relief is not barred by the Eleventh Amendment. Page v. Hicks, 773 F. App'x 514, 518 (11th Cir. 2019).

Here, Plaintiffs' claims against Defendants in their official capacities challenging policies concerning conditions of confinement at the Clayton County Jail. (Doc. 1.) While Defendants acknowledge that Plaintiffs' claims for prospective injunctive relief against the Sheriff in his official capacity are not barred by the Eleventh Amendment under the Ex parte Young exception, all other claims are barred.

**B.**   **Redundant Official Capacity Claims Are Subject to Dismissal**

While Plaintiffs' complaint identifies Defendants Boehrer, Gibson, Thomas, and Johnson as parties in their official capacities, Plaintiffs' claims against these Defendants are claims, in essence, against Sheriff Hill, who is already named in the complaint.  Indeed, "[o]fficial-capacity suit[s] . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  Kentucky v. Graham, 473 U.S. 159, 165 (1985).  As such, "there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly."  S.W. v. Clayton Cty. Pub. Sch., 185 F. Supp. 3d 1366, 1374-75 (N.D. Ga. 2016) (citing Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991)).

Here, Defendants Boehrer, Gibson, Thomas, and Johnson are employees of the Sheriff.  See Manders, 338 F.3d at 1311.  Plaintiffs' suit against these parties in their official capacities is, therefore, technically a suit against Sheriff Hill.  Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir. 1999) (a suit against a governmental official in her official capacity is deemed a suit against the entity that she represents).  Plaintiffs naming of Defendants Boehrer, Gibson, Thomas, and Johnson in their official capacities is duplicative and unwarranted. See S.W. v. Clayton Cty., 185 F. Supp. 3d at 1374-75. Therefore, Defendants Boehrer, Gibson, Thomas, and Johnson should be dismissed from this matter.

C.    **Plaintiffs' § 1983 Claims Are Subject to Dismissal Under The PLRA**

The Prison Litigation Reform Act, or PLRA, requires that inmates exhaust all available administrative remedies before filing a lawsuit regarding a jail's conditions. 42 U.S.C. § 1997e(a). The Supreme Court has held "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007); Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[The] requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").  As discussed below, Plaintiffs failed to exhaust all available administrative remedies regarding their claims brought under §1983 because they either did not file grievances regarding the conditions they complain of, or did not file an appeal.

1.    **Legal Standard on a Motion to Dismiss Under the PLRA**

"Deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008).

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.

Id.  The PLRA exhaustion defense is generally analyzed using the subject matter jurisdiction standard of Rule 12(b)(1). See Bryant v. Rich, 530 F.3d 1368, 1374–76

(11th Cir. 2008); <u>Turner</u>, 541 F.3d at 1082 ("This means that procedurally the defense is treated 'like a defense of lack of jurisdiction,' although it is not a jurisdictional matter.").

> [Second,] [i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion.

<u>Turner</u>, 541 F.3d at 1082. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." <u>Id.</u> at 1083.

## 2. Plaintiffs Must Exhaust Administrative Remedies Before Filing § 1983 Claims

The PLRA provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The language of the statute demonstrates it applies to inmates confined in a jail. <u>Kingsley v. Hendrickson</u>, 576 U.S. 389, 402 (2015) ("[The PLRA] applies to both pretrial detainees and convicted prisoners."). A court does not have the discretion to waive the exhaustion requirement and there are no "special circumstances" exceptions to the exhaustion requirement. <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1325–26 (11th Cir. 1998); <u>see</u> <u>Ross v. Blake</u>, 136 S. Ct. 1850 (2016).

The PLRA requires "proper" exhaustion. <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006). For inmates to "properly" exhaust their claims, they must "us[e] all steps" in the administrative process, and they must comply with "deadlines and other critical procedural rules." <u>Id.</u> at 89 (internal quotations omitted). If an administrative remedy is "available," it must be exhausted.  42 U.S.C. § 1997e(a); <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1326 (11th Cir. 1998). To exhaust all available administrative remedies, inmates must also pursue all administrative appeals.  <u>Moore v. Smith</u>, 18 F. Supp. 2d 1360, 1362 (N.D. Ga. 1998).  If inmates fail to complete the administrative process or fall short of compliance with the procedural rules governing inmate grievances, they default their claims.  <u>Johnson v. Meadows</u>, 418 F.3d 1152, 1159 (11th Cir. 2005).  Recently, the Eleventh Circuit has recognized the applicability of the PLRA and the exhaustion procedure to COVID-19 related conditions of confinement claims.  <u>See, e.g.</u>, <u>Swain v. Junior</u>, 961 F.3d 1276, 1292 (11th Cir. 2020) (finding that the district court erred in refusing to consider the defendants' arguments with respect to PLRA exhaustion in COVID-19 conditions of confinement case).[1]

---

[1] <u>See</u> <u>also</u> <u>Sanchez v. Brown</u>, 2020 U.S. Dist. LEXIS 90667, *56 (N.D. Tex. May 22, 2020) (finding that PLRA exhaustion requirements apply to § 1983 claims arising from COVID-19 and conditions of confinement claims); <u>Nellson v. Barnhart</u>, No. 20-cv-00756-PAB, 2020 U.S. Dist. LEXIS 66971, at *13 (D. Colo. Apr. 16, 2020) (finding that plaintiff failed to exhaust his administrative remedies before seeking judicial relief in COVID-19 jail conditions case).

### 3.    Plaintiffs Failed to Exhaust Administrative Remedies Before Filing § 1983 Claims

The Jail has formal procedures in place for persons confined in the Jail to file grievances when they feel it is necessary to do so. (See Declaration of Terrance Gibson attached hereto as Exhibit A, ¶ 3.) The Clayton County Sheriff's Office Standard Grievance Procedure (the "Grievance Procedure") provides:

> a.   Prior to the filing of a formal written grievance, an inmate shall attempt to resolve his or her grievance informally through discussion with an officer.  If this effort fails, the inmate may submit a written grievance. The inmate must file the grievance within five (5) days of the alleged incident.  Any grievances unresolved at the time of the inmate's release shall be considered closed.

> e.   **If the inmate disagrees with the response from the Grievance Officer, the inmate shall submit a written appeal to the Jail Administrator or his/her designee within two (2) days.** The Jail Administrator or his/her designee may support the original resolution or offer another. The Jail Administrator or his/her designee shall return his or her decision within ten (10) days.

> f.   If the inmate fails to submit a written notification of disagreement within two (2) days of the receipt, the grievance shall be considered administratively closed.

(Id., Exhibit 1 (emphasis added).)

Under the Grievance Procedure above, if an inmate intends to file a grievance, the inmate must do so in writing within five (5) days of the incident giving rise to the grievance. (Id.) Moreover, if an inmate is displeased with the resolution of the inmate's formal grievance, then the Jail has appeal procedures in place stating the

inmate shall file an appeal to the Jail Administrator or his/her designee within two (2) days. (<u>Id.</u>) Inmates are advised of the Grievance Procedure during inmate orientation. (<u>Id.</u>, ¶ 7.) In the complaint, moreover, Plaintiffs show they are aware that the Jail has grievance procedures. (Doc. 1, pp. 22, 24, 48–51.) As shown below, Plaintiffs each failed to exhaust the Jail's administrative remedies prior to filing suit.

    a. *Barry Watkins*

Attached to Lieutenant Terrance Gibson's Declaration as <u>Exhibit 2</u> are all of the grievances submitted by Plaintiffs through July 10, 2020. (<u>Exhibit A</u>, ¶ 4 and <u>Exhibit 2</u> thereto.) The Jail's records show that Watkins never submitted any grievances related to COVID-19 and the alleged conditions of the Jail prior to filing suit. (<u>Id.</u>) Therefore, Watkins failed to even initiate the grievance procedure necessary to exhaust his administrative remedies.

    b. *Rhonda Jones*

The Jail's records show that Jones never submitted any grievances related to COVID-19 and the alleged conditions of the Jail prior to filing suit. (<u>Id.</u>) On June 4, 2020, however, Jones did submit an appeal to a previously filed grievance requesting to be refunded money, wherein she raised for the first time the following: "THIS PLACE ISNT UPGRADING MEDICAL STANDARDS TO COMPLY WITH COVID 19!!! THE PHONES ARE NOT SANTISED. THERES WATER LEAKING IN MY ROOM. I HAVE HAD 4 NEW ADMITS ROOM MATES

THAT CAME STRAIGHT TO POPULATION.  AND IVE NOT NOTICED ANY USE OF LYSOL.  I TEXTED ABOUT THIS TO NO AVAIL.  THE STAFF FOCUS ON BEDS BUT NOY LYSOL."  (<u>Id.</u>, <u>Exhibit 3</u>, p. 1.)  While the new subject matter presented in the appeal was related to purported medical standards, sanitization of phones, a water leak, room assignment, and use of Lysol, this appeal does not properly exhaust administrative remedies because Jones did not follow the Grievance Procedure by first filing her concerns via a <u>grievance</u> as opposed to an appeal.  Moreover, the Grievance Procedure provides that "[i]nmates may only address one area of concern per Grievance Form." (<u>Id.</u>, <u>Exhibit 1</u>.)  Jones' attempt to raise multiple issues in an appeal from an unrelated grievance is not a proper method of exhausting the Jail's administrative remedies.

Even if the Court is persuaded that Jones' grievance masquerading as an appeal from a separate unrelated grievance is substantively adequate, Jones still failed to exhaust her administrative remedies because she never pursued an appeal from the response.  (<u>Id.</u>, <u>Exhibit 3</u>.)  Therefore, for this additional reason, Jones's claim is procedurally barred by the PLRA.  <u>Moore</u>, 18 F. Supp. 2d at 1362 (holding that inmate must pursue all of his administrative appeals in order to comply with the PLRA's administrative exhaustion requirement); <u>Mason v. Bridger</u>, 261 F. App'x 225, 229 (11th Cir. 2008) (finding that inmate's failure to appeal denials of grievances was fatal to consideration of his claims on the merits).

- 10 -

### c.   *Randolph Mitchell*

The Jail's records show that Mitchell submitted a grievance on May 19, 2020 requesting to "speak to someone about a covid 19 test" and that he also wanted a COVID-19 test and a mask. (Exhibit A, Exhibit 2 thereto, p. 7.)  However, the notes in response show that he was "scheduled for sick call" and was referred "to security for mask."  (Id.)  To the extent Mitchell did not receive the test or the mask, he could have appealed the grievance. However, according to the Jail's records, Mitchell never pursued an appeal as required under the Grievance Procedure and therefore failed to exhaust his administrative remedies. (Id., Exhibit 3.)

Even if Mitchell properly exhausted his administrative remedies, as Plaintiffs concede, Mitchell is no longer incarcerated at the Jail, which "moot[s] his claims." (Doc. 9, n. 2.)  Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir. 2007) ("[t]he general rule in our circuit is that a transfer or release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief.").[2]

### d.   *Michael Singleton*

Finally, the Jail's records show that Singleton submitted a grievance on May 15, 2020 requesting masks, cleaning supplies, disinfectant, and "net bags to do our

---

[2] See also Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986) ("[i]n view of Zatler's release, we find that his claims for declaratory and injunctive relief are now moot."); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985)("[a]bsent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred.").

personal laundry." (Exhibit A, Exhibit 2 thereto, p. 12.) The notes in response show that "All issues have been addressed." (Id.) To the extent Singleton had any issues with the response or what he was provided, he could have appealed. Mitchell, however, never pursued an appeal and therefore failed to exhaust his administrative remedies. (Id., Exhibit 3.)

For the reasons above, Plaintiffs' claims brought under §1983 are procedurally barred by the PLRA for failure to exhaust all available administrative remedies before bringing this suit. Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004) (finding that inmate satisfied PLRA's exhaustion requirement by following the proper grievance procedure when unsatisfied with response to grievance).[3]

---

[3] Should the Court find that any of the Plaintiffs properly exhausted the administrative remedies, then the Court should limit Plaintiffs' claims only to the specific items of concern brought to the Jail staff's attention, which are sanitization of phones, masks, cleaning supplies, disinfectant, and COVID-19 tests. (Id., Exhibit 2.) Plaintiffs' challenges to conditions outside of these **five** specific categories have not been properly brought to the attention of the Jail's staff through the Grievance Procedure prior to suit and should be dismissed outright for failure to exhaust administrative remedies. Sylvester v. Chandler, No. 07 C 50050, 2010 U.S. Dist. LEXIS 88683, at *13 (N.D. Ill. Aug. 27, 2010) ("Because the June grievance failed to identify misconduct or describe those who treated him badly, it did not provide the prison with any opportunity to address plaintiff's concern that he was being abused by Dixon nurses. Accordingly, the court finds that plaintiff did not exhaust his remedies with respect to the claims").

**4.    Plaintiffs Failed to Follow the PLRA's Required Procedure to Obtain an Inmate Release Order**

Plaintiffs have requested the "release" of themselves and other inmates held at the Jail. (Doc. 1, p. 109.)  Under the PLRA, a federal court may not enter an inmate release order unless there has been a prior order "for less intrusive relief that has failed to remedy the deprivation of the Federal right sought to be remedied through the prison release order," and the defendant "has had a reasonable amount of time to comply with the previous court order[]." 18 U.S.C. § 3626(a)(3)(A).

Additionally, only a three-judge court may enter a prison release order and can only do so after an inmate files an appropriate request. 18 U.S.C. § 3626(3); see Laube v. Haley, 242 F. Supp. 2d 1150, 1152 (M.D. Ala. 2003). The three-judge panel may enter such an order "only if the court finds by clear and convincing evidence that—(i) crowding is the primary cause of the violation of a Federal right; and (ii) no other relief will remedy the violation of the Federal right." 18 U.S.C. § 3626(3).

Here, Plaintiffs may not circumvent the PLRA's unambiguous requirements to obtain release. Plaintiffs complain about the current conditions of the Jail, and as previously discussed, such complaints fall squarely within the purview

- 13 -

of the PLRA. Because there has been no prior order entered and this case is not before a three-judge panel, Plaintiffs may not obtain release as an available remedy.[4]

**D.** **Plaintiffs Lack Standing to Bring this Lawsuit Seeking Injunctive Relief**

    **1.** **Plaintiffs Do Not Adequately Allege an Injury in Fact**

While Plaintiffs allege COVID-19 may be a risk to their health if contracted, Plaintiffs have failed to allege they have a real prospect of a future injury manifesting, i.e., contracting COVID-19, and therefore lack standing to seek injunctive relief.

Regarding standing to seek injunctive relief, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994). "And an injunction cannot be fashioned when the prospect of future injury is only speculative; again, there must be a 'likelihood of substantial and immediate irreparable injury.'" Gagliardi v. TJCV Land Tr., 889 F.3d 728, 734 (11th Cir. 2018) (citing Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)).

---

[4] Should Plaintiffs' claims proceed, they still "would not be entitled to the relief [they seek] because release from imprisonment is not an available remedy for a conditions-of-confinement claim." Vaz v. Skinner, 634 F. App'x 778, 781 (11th Cir. 2015).

Plaintiffs allege that the Jail has "approximately 2,000 detainees" and allege as of June 11, 2020, "32 detainees and 13 staff members" have tested positive for COVID-19.  (Doc. 1, p. 4–5.)  Plaintiffs therefore contend that only 1.6% of inmates have tested positive for COVID-19 which is far from the "outbreak" Plaintiffs allege has occurred at the Jail. Additionally, the complaint is devoid of any allegations that any inmates at the Jail have died as a result of COVID-19. (Id.)

Plaintiffs' "prospect of future injury" is only speculative. Plaintiffs do not allege that they have contracted COVID-19 during the pendency of their incarceration.  Plaintiffs fail to show in the complaint that they have a greater likelihood of contracting COVID-19 in the Jail as opposed to if they were released and exposed elsewhere.  Indeed, the death toll in Georgia, in the United States, and globally as well as the percentages of infection are all greater than in the Jail.  Due to the low infection rate at the Jail, Plaintiffs only speculate that they will be exposed to COVID-19, speculate that they may contract COVID-19, and speculate that they would suffer injury thereby.  Gagliardi, 889 F.3d at 734.  Therefore, because the likelihood of future injury at the Jail is mere guesswork, "[a]nd an injunction cannot be fashioned when the prospect of future injury is only

- 15 -

speculative," Plaintiffs lack standing to seek injunctive relief from the Court, and the claims for injunctive relief should be dismissed.[5] Id.

### 2. Plaintiffs Have Not Adequately Alleged Traceability and Redressability Because They Did Not Sue CorrectHealth, LLC

Plaintiffs seek injunctive relief pertaining to medical education on the novel COVID-19 virus, to change or formulate the medical screening process as they deem fit, for a supply of COVID-19 tests, administration of COVID-19 tests, alteration of existing COVID-19 responses, including detecting, quarantining, evaluating symptoms, and treating COVID-19, and administering influenza vaccinations, to name a few. (See, e.g., Doc. 19-5.)

As Plaintiffs are well familiar with, the medical provider at the Jail is CorrectHealth, LLC. (Doc. 19-9.) However, Plaintiffs did not name CorrectHealth, LLC to this action and therefore lack standing to seek medically-related injunctive relief. The Eleventh Circuit recently explained, "[t]o satisfy the causation requirement of standing, a plaintiff's injury must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" Jacobson v. Fla. Sec'y, 957 F.3d 1193, 1207 (11th Cir. 2020). Further, "it must be the effect of the court's judgment on the defendant—not an absent third party—that redresses the plaintiff's injury, whether

---

[5] Because Mitchell is no longer subject to any conditions at the Jail, he lacks standing for this additional reason.

directly or indirectly." <u>Lewis v. Governor of Ala.</u>, 944 F.3d 1287, 1301 (11th Cir. 2019).

Plaintiffs have only named the Sheriff in this action and his employees, even though Plaintiffs are aware that CorrectHealth, LLC is contracted to provide medical care and services at the Jail.   (Doc. 19-5.)   Thus, even if Plaintiffs obtain all the relief they seek, this Court's order cannot enjoin "absent nonparties." <u>Jacobson</u>, 957 F.3d at 1208. Because Plaintiffs seek targeted relief from the Sheriff while leaving out a necessary party, CorrectHealth, LLC, they fail to establish redressability for their claimed "injuries."  Thus, Plaintiffs undermine their own claims of imminent "injury" by leaving out the actual medical provider at the Jail which would necessarily prolong any uniform implementation or enforcement of any order issued by this Court.

Some District Courts have succumbed to the temptation to correct the deficient pleadings of a plaintiff that fails to join all necessary parties, but the Eleventh Circuit decision in <u>Jacobson</u> suggests this Court should refrain from embarking on such a course of action.  <u>Jacobson</u>, 957 F.3d at 1209 ("If a plaintiff sues the wrong defendant, an order enjoining the correct official who has not been joined as a defendant cannot suddenly make the plaintiff's injury redressable."). A declaratory judgment or injunction against the Sheriff here does not apply to CorrectHealth, LLC "who [is] not [a] part[y] to this action." <u>Id.</u>  "Any persuasive

effect a judicial order might have upon [non-parties] . . . cannot suffice to establish redressability." Id. at 1208.  Therefore, the "failure to join [CorrectHealth, LLC] is an independent reason that [Plaintiffs] lack standing," id. at 1207, and in turn, this Court should dismiss Plaintiffs' Complaint because they have not adequately alleged facts sufficient to support standing.

**E.   Plaintiffs' Habeas Claims Are Subject to Dismissal**

**1.   Plaintiffs Have Not Stated a Claim for Habeas Relief Because Their Claims Relate to Conditions at the Jail and Not the Cause or Duration of Their Detention**

A habeas corpus petition under 28 U.S.C. § 2241 is "generally reserved for challenges to execution of a sentence or the nature of confinement, not the validity of the sentence itself or the fact of confinement." Bryant v. Warden, 738 F.3d 1253, 1288 (11th Cir. 2013).  "Habeas is not available to review questions unrelated to the cause of detention. Its sole function is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." Villafuerte v. Warden, Stewart Det. Ctr., No. 4:18-CV-116-CDL-MSH, 2018 U.S. Dist. LEXIS 212877, at *6–7 (M.D. Ga. Nov. 27, 2018) (citing Pierre v. United States, 525 F.2d 933, 935-36 (5th Cir. 1976)).

Here, Plaintiffs complain about their conditions of confinement, not the cause for their detention. When claiming inadequate conditions of confinement, a petition for a writ of habeas corpus is not the proper vehicle for such a claim. Vaz v. Skinner,

634 F. App'x 778, 781 (11th Cir. 2015) ("Petitioner's § 2241 petition is not the appropriate vehicle for raising an inadequate medical care claim, as such a claim challenges the conditions of confinement, not the fact or duration of that confinement."); see A.S.M. v. Donahue, No. 7:20-CV-62 (CDL), 2020 U.S. Dist. LEXIS 65226, at *4 (M.D. Ga. Apr. 10, 2020) (finding "writ of habeas corpus is not the appropriate mechanism for seeking the relief Petitioners request" as related to COVID-19 and the conditions of detention center). Therefore, habeas corpus is not available to inmates who complain about the conditions of confinement.

Here, Plaintiffs have not pleaded, and cannot plead, any set of facts under which they could obtain  habeas  relief.  Plaintiffs make a plethora of complaints about the conditions of—not the fact of—their confinement. As three examples: "The overcrowded cells where detainees spend most of their time are almost never sanitized. . . . The 20-year-old jail facility has recurring maintenance issues. . . . In sum, the Clayton County Jail is understaffed, unsanitary, and chronically mismanaged." (Doc. 1, p. 27, 28, 30.) Such allegations concern the conditions of the Jail, and not the "fact" of Plaintiffs' confinement.

Whatever their conditions of confinement, they are not related to Plaintiffs' "fact or duration" of their respective confinements. Therefore, a habeas corpus petition under § 2241 is not the proper vehicle for Plaintiffs to present such claims or allegations and Plaintiffs' request for such relief should be dismissed.

- 19 -

2.    **Plaintiffs' Habeas Claims Must Be Dismissed Because Plaintiffs Have Not Exhausted Available State Court Remedies**

Even if the Court were to determine Plaintiffs could seek relief under § 2241, exhaustion of administrative remedies under state law is a prerequisite to filing a habeas corpus petition.  In order to be eligible for habeas relief, Plaintiffs must have exhausted their available state court remedies. O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999); Reedman v. Thomas, 305 F. App'x 544, 545 (11th Cir. 2008). It is Plaintiffs' burden to show exhaustion. McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005). A habeas petition must be dismissed if the inmates have not exhausted available state remedies concerning any of their claims. O'Sullivan, 526 U.S. at 852.

Notably, the exhaustion doctrine imposed on § 2241(c)(3) is based on concerns about the state-federal balance in order to protect state courts' opportunity to confront and resolve initially any constitutional issues arising within their jurisdictions, as well as to limit federal interference in the state adjudicatory process. Braden v. 30th Judicial Circuit Court of Ky., 410 U.S. 484, 489–92 (1973). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court.

Habeas relief is available under Georgia law for both pre-trial detainees and post-conviction detainees to challenge the constitutionality of their detention. O.C.G.A. § 9-14-1, et seq. Clayton County courts, along with all courts in Georgia,

are open and the courts are using all available means to conduct essential hearings. (Fourth Order Extending Declaration of Statewide Judicial Emergency, Supreme Court of Georgia, July 10, 2020.)  Plaintiffs do not allege in their complaint that they have made any attempt whatsoever to challenge their detention via state court proceedings first, prior to filing suit.  (Doc. 1.)  Because Plaintiffs have failed to exhaust state law remedies that are available pursuant to Georgia law, their claims must be dismissed.

## F.  **Plaintiffs Fail to State A Claim Under Title II of The ADA or Section 504 of the RA**

Title II of the Americans with Disabilities Act ("ADA") prohibits a public entity from discriminating against disabled individuals and states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504 of the Rehabilitation Act ("RA") protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs or activities "solely by reason of her or his disability." 29 U.S.C. § 794(a).

To state a claim under the ADA and RA, "a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from

participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was **by reason of the plaintiff's disability**." Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1083 (11th Cir. 2007) (emphasis added); see Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000) ("Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases.").

Here, Plaintiffs contend that they are qualified individuals with disabilities based on their underlying health conditions. Plaintiffs outline the risks of contracting COVID-19 and have asserted that Defendants have generally failed to take appropriate measures to protect all inmates at the Jail. (Doc. 1.) Plaintiffs, however, do not allege sufficient facts to establish that Defendants failed to provide Plaintiffs with any reasonable accommodations by reason of their proposed disabilities—other than immediate release from the Jail—or that any specific action was taken against Plaintiffs by reason of their proposed disabilities. (Id.) Accordingly, Plaintiffs' ADA and RA claims are subject to dismissal for failure to state a claim.

## G. Plaintiffs' "Unconstitutional Punishment" Claim in Count I is Subject to Dismissal For Failure to State a Claim

Plaintiffs have improperly attempted to carve out a separate claim for unconstitutional "punishment" in violation of the Fourteenth Amendment, as found

in Count I of the complaint, in addition to seeking relief from alleged unconstitutional "conditions of confinement" in violation of the Eighth and Fourteenth Amendments, as found in Count II of the complaint. (Doc. 1, pp. 100, 101.)

The Supreme Court held in <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979) that conditions claims brought by pretrial detainees arise under the Fourteenth Amendment, which prohibits punishment prior to the adjudication of guilt. A condition violates the Fourteenth Amendment if it is imposed with the intent, express or inferred, to punish the pretrial detainee. <u>Id.</u> at 538-40. "The Eighth Amendment … 'cruel and unusual punishments' standard applies to the conditions of a prisoner's confinement." <u>Swain v. Junior</u>, 958 F.3d 1081, 1088 (11th Cir. 2020). This Circuit has held that the decisional law applicable to prison inmates applies <u>equally</u> to pretrial detainees. <u>Hamm v. DeKalb Cty.</u>, 774 F.2d 1567, 1574 (11th Cir. 1985); <u>see also</u> <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1490 (11th Cir. 1996). As a result, this Circuit requires a plaintiff, regardless if that plaintiff is a pre-trial detainee or prisoners, challenging the conditions of confinement to show both that the deprivation suffered was objectively serious and that prison officials were deliberately indifferent to the violation of the plaintiff's constitutional rights. <u>See</u> <u>Evans v. St. Lucie Cty. Jail</u>, 448 F. App'x 971, 973–75 (11th Cir. 2011) (requiring that a pretrial detainee bringing a prison conditions case show that (1) the deprivation

was "sufficiently serious" and (2) prison officials had a "sufficiently culpable state of mind").

Here, Plaintiffs have attempted to impose a rational basis test under the Fourteenth Amendment as the proper standard of review for their claims related to the conditions of confinement, which is in direct violation of the principles established by the Supreme Court. Cty. of Sacramento v. Lewis, 523 U.S. 833, 843, 118 S. Ct. 1708, 1715 (1998) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). Plaintiffs use the language "Defendants' conduct either is not rationally related to a legitimate, nonpunitive government purpose or is excessive in relation to a legitimate, nonpunitive government purpose" to attempt to create a claim for unconstitutional "punishment" in violation of the Fourteenth Amendment, as found in Count I of the complaint. (Doc. 1, p. 100.) However, examination of conditions of confinement is properly analyzed under a deliberate indifference standard under the Eighth and Fourteenth Amendment. See Swain, 958 F.3d at 1088; Hamm, 774 F.2d at 1574. Therefore, Plaintiffs' claim in Count I should be dismissed, as the claim is an improper carve out of a conditions of confinement claim, which Plaintiffs already assert in Count II.

### III.  <u>CONCLUSION</u>

"Plaintiffs requested extraordinary relief, but even—especially—in these extraordinary times, the letter of the law must still be followed." <u>Sanchez</u>, 2020 U.S. Dist. LEXIS 90667, *60.  COVID-19  concerns are serious and are causing critical health and public safety issues globally, in this country, in this state, in local governments, including jails, as well as within the framework of businesses and corporations.   The seriousness of COVID-19 cannot be ignored.   However, Plaintiffs' complaint, which essentially mirrors complaints filed across the country as a wholesale attack on jails and prisons, must be dismissed outright for the reasons noted above.

FREEMAN MATHIS & GARY, LLP

*/s/ A. Ali Sabzevari*
Jack R. Hancock
Georgia Bar No. 322450
jhancock@fmglaw.com
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com
Jacob W. Loken
Georgia Bar No. 200193
jloken@fmglaw.com

*Attorneys for Defendants*

661 Forest Parkway, Suite E
Forest Park, GA  30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to Local Rule 7.1(D), that the foregoing memorandum of law has been prepared in accordance with Local Rule 5.1(C) (Times New Roman font, 14 point).

This 3rd day of August, 2020.

FREEMAN MATHIS & GARY, LLP

*/s/ A. Ali Sabzevari*
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com

*Attorney for Defendants*

661 Forest Parkway, Suite E
Forest Park, GA  30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF system participants:

Ryan Primerano
Sarah Geraghty
Jeremy Cutting
Southern Center for
Human Rights
60 Walton Street
Atlanta, Georgia 30303
rprimerano@schr.org
sgeraghty@schr.org
ccutting@schr.org

Stephen L. Pevar
American Civil Liberties
Union Foundation
765 Asylum Ave
Hartford, Connecticut 06105
spevar@aclu.org

Kosha S. Tucker
American Civil Liberties Union
Foundation of Georgia
P.O. Box 77208
Atlanta, Georgia 30357
ktucker@acluga.org

Brandon Buskey
Robert W. Hunter
American Civil Liberties
Union Foundation
125 Broad Street
New York, NY 10004
bbuskey@aclu.org

David C. Fathi
American Civil Liberties
Union Foundation
915 Fifteenth Street, Seventh Floor
Washington, DC 20005
dfathi@aclu.org

This 3rd day of August, 2020

/s/ A. Ali Sabzevari
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com

*Attorney for Defendants*

FREEMAN MATHIS & GARY, LLP
661 Forest Parkway, Suite E
Forest Park, GA  30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)