IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RHONDA JONES, et al.,                  )
                                       )
        Plaintiffs,                    )       CIVIL ACTION
                                       )
v.                                     )       FILE NO. 1:20-CV-02791-JPB
                                       )
VICTOR HILL, et al.                    )
                                       )
        Defendants.                    )

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

## I.   ARGUMENT AND CITATION TO AUTHORITY

### A.   Plaintiffs Do Not Have Standing to Bring This Lawsuit

### 1.   Plaintiffs Only Allege a Speculative Injury

Defendants established in their initial brief that Plaintiffs' prospect of future injury, which can be boiled down to a fear of contracting COVID-19, is only speculative which is insufficient for standing. Gagliardi v. TJCV Land Tr., 889 F.3d 728, 734 (11th Cir. 2018) ("an injunction cannot be fashioned when the prospect of future injury is only speculative; again, there must be a 'likelihood of substantial and immediate irreparable injury.'").

Plaintiffs respond that the risk of future injury is not speculative because COVID-19 is highly contagious, has killed hundreds of thousands of Americans, jails generally are considered high-risk, and numerous jails have had outbreaks.

(Doc. 37, pp. 9-10.)   But these are precisely the types of vague allegations and assertions that are insufficient to establish standing.  Plaintiffs only speculate they will be exposed to COVID-19, speculate they may contract COVID-19, and speculate they would suffer injury thereby. Plaintiffs merely posit the same general fears shared by those outside the Jail and the world.

Plaintiffs also respond that the Jail has inmates that are infected with COVID-19 and lean on this allegation as an attempt to prove a non-speculative prospect of future injury; however, this contention fails too because it does not in and of itself establish a "realistic danger" of future injury beyond an assertion that is "hypothetical or conjectural." Fla. State Conference of the NAACP v. Browning, 522 F.3d 1153, 1159 (11th Cir. 2008).  In fact, the Jail has had a very low infection rate (Doc. 31-1, p. 8), and to this date, Plaintiffs have not contracted COVID-19. Plaintiffs' complaint, moreover, is devoid of any allegations regarding what level of exposure leads to contracting COVID-19, and is further devoid of any specific or scientific data, including any data on how long an individual must be exposed to COVID-19 and to what viral load, before contracting the virus.[1] The failure to plead such facts leaves Plaintiffs' complaint riddled with general fears of what could occur anywhere, which is fatal to Plaintiffs proving they have standing.  See Wooden v.

---

[1] For purposes of a simple analogy, exposure to the sun does not mean one will receive a sunburn, and simply stating same does not prove an injury-in-fact.

<u>Bd. of Regents of the Univ. Sys.</u>, 247 F.3d 1262, 1284 (11th Cir. 2001).  Therefore, because the likelihood of future injury at the Jail is mere guesswork, and the risk of contracting COVID-19 may be greater outside the Jail, Plaintiffs lack standing to seek injunctive relief from the Court.  <u>Gagliardi</u>, 889 F.3d at 734.

## 2. Failure to Establish Redressability

In their initial brief, Defendants established that Plaintiffs cannot establish redressability because they failed to name the medical provider at the Jail, CorrectHealth, LLC ("CorrectHealth"), as a party.  Indeed, the Eleventh Circuit recently explained, "[t]o satisfy the causation requirement of standing, a plaintiff's injury must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'"  <u>Jacobson v. Fla. Sec'y</u>, 957 F.3d 1193, 1207 (11th Cir. 2020).

In response, Plaintiffs contend that naming CorrectHealth is not necessary for standing because Defendants "are responsible for operating the Jail and providing for Detainees' needs."  (Doc. 37, p. 14.)  There are no allegations in the complaint, however, to show that the Sheriff has control over any of the medically-related decisions by CorrectHealth and its staff, and the Sheriff is not a medical professional.  Plaintiffs do not dispute that CorrectHealth is the entity that actually provides for the the medical care and treatment of detainees and inmates at the Jail.  Based on this responsibility, medical providers can be subject to liability under Section 1983.  The

Eleventh Circuit has "held that the employees of a private entity hired by a county to provide medical care to jail inmates . . . [are] subject to liability under § 1983." Ort v. Pinchback, 786 F.2d 1105, 1107 (11th Cir. 1986).  Because CorrectHealth is held responsible for its own actions, it is a required party to this action for purpose of redressability.

Finally, Plaintiffs contend that if CorrectHealth is a necessary party, the Court should join it as a party rather than dismiss for lack of standing.  (Doc. 37, p. 15.) However, Plaintiffs ignore the fact that the Court would be without jurisdiction to join nonparties. Jacobson, 957 F.3d at 1209 ("If a plaintiff sues the wrong defendant, an order enjoining the correct official who has not been joined as a defendant cannot suddenly make the plaintiff's injury redressable.").  Therefore, Plaintiffs' complaint should be dismissed because they have not adequately named a required party and have failed to allege facts sufficient to support standing.

**B.**     **Plaintiffs' Redundant Official Capacity Claims Are Subject to Dismissal**

Defendants established in their initial brief that it is redundant to sue any of the Sheriff's employees in their official capacities because the Sheriff is a party to this suit.  In response, Plaintiffs contend that naming the Sheriff's employees in their official capacities is proper because they are seeking injunctive relief.  (Doc. 37, pp. 16-17.)   However, Plaintiffs have brought claims under Section 1983, and the Eleventh Circuit has made clear that  "when an officer is sued under Section 1983

in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991). Moreover, none of the cases cited by Plaintiffs involve a sheriff's management of the conditions of a jail, and Plaintiffs even acknowledge that it is the Sheriff's responsibility to "operate the Clayton County Jail system…and to ensure safe and sanitary conditions of conferment." (Doc. 37, p. 23.) Therefore, the official capacity claims against the Sheriff's staff are redundant and unnecessary. Purcell v. Toombs Cnty., 400 F.3d 1313, 1325 (11th Cir. 2005).

## C. Plaintiffs Fail to Prove They Satisfied the PLRA's Requirement to Exhaust Administrative Remedies Before Filing Suit

As established in Defendants' initial brief, Plaintiffs failed to satisfy the PLRA's requirement that they exhausted all available administrative remedies before filing a lawsuit regarding the Jail's conditions, which warrants dismissal. This result should not shock Plaintiffs' counsel, as the ACLU's own PLRA practice guide warns "[i]f you file a lawsuit in federal court before taking your complaints through every step of your prison's grievance procedure, it will almost certainly be dismissed." American Civil Liberties Union, KNOW YOUR RIGHTS: THE PRISON LITIGATION REFORM ACT (PLRA), available at https://www.aclu.org/sites/default/files/images/asset_upload_file79_25805.pdf (last visited Aug. 25, 2020).

1.      **Challenge to the Availability of the Grievance Procedure Fails**

In their response, Plaintiffs state that the Grievance Procedure was somehow unavailable to them and that a detainee need not exhaust unavailable remedies. (Doc. 37, pp. 19-20.) While "[a]n administrative procedure that is **unknown and unknowable** is unavailable," Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017), the Grievance Procedure at the Jail is neither of these things.  Plaintiffs assert that Defendants have not shown that Plaintiffs "were informed of the grievance policy or its rules so that it would be 'practically' capable of use." (Doc. 37, p. 19.) Yet, Defendants have submitted declarations from a lieutenant and an inmate at the Jail to show that inmates are educated about the Grievance Procedure during orientation and that grievances are available via the Kiosk. (Gibson Declaration; Demarco May Declaration.)  These facts are not conclusory, as Plaintiffs contend, but instead are <u>conclusive</u> in establishing that inmates are informed and well aware about the Grievance Procedure.[2]   Additionally, Plaintiffs' complaint, and the evidence submitted by Defendants, establish that Plaintiffs are aware of the Kiosk grievance process because they utilized it. (Doc. 1, pp. 22, 24, 48–51.) Plaintiffs' Kiosk entries undercut any contention that the process was unknown or unavailable

---

[2] While the factual statement is brief, it is not a conclusory statement, as a conclusory statement would be simply stating inmates know of the Grievance Procedure. See Rogers v. Evans, 792 F.2d 1052, 1062 n.9 (11th Cir. 1986) ("The affidavit is phrased in conclusory terms without citing facts.").

to them.  Plaintiffs were informed of the Grievance Procedure, it was capable of use, and it was used thereby showing Plaintiffs understand how to grieve according to the Grievance Procedure.  Presley, 679 F. App'x at 912.

Next, Plaintiffs contend that the Grievance Procedure describes a paper-based protocol not used at the Jail.  (Doc. 37, pp. 20-21.)  While the written Grievance Procedure technically does not refer to the Kiosk, this is immaterial because the process is the same.  The Grievance Procedure, moreover, adequately explains submitting grievances and appeals therefrom, and inmates are educated at orientation how to use the Kiosk, which Plaintiffs had no trouble doing here. (Gibson Decl.; May Decl.)  The Grievance Procedure is understood and available under the PLRA. Therefore, Plaintiffs' contention is unpersuasive.

## 2.    No Class Certification

In their response, Plaintiffs continually refer to "class members" and "class representatives" in their discussion of the PLRA's exhaustion requirement and contend that they have satisfied "vicarious exhaustion." (Doc. 37, p. 21.)  Vicarious exhaustion is only available when a class has been certified, but because no class has been certified, the Court is to only look to the grievances filed by the named Plaintiffs. See Chandler v. Crosby, 379 F.3d 1278, 1287 (11th Cir. 2004) ("We hold that a class of prisoner-plaintiffs certified under Rule 23(b)(2) satisfies the PLRA's administrative exhaustion requirement through  'vicarious exhaustion,' i.e., when

one or more class members has exhausted his administrative remedies with respect to each claim raised by the class."). This matter has <u>not</u> been certified as a class action, and no class members or class representatives exist. <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 310 n.1 (1976) ("Without such certification and identification of the class, the action is not properly a class action.").  Therefore, Plaintiffs' contention lacks merit.

### 3.    Challenge to the Exhaustion of the Grievance Procedure Fails

Finally, Plaintiffs contend that Defendants have not met their burden to show that the named plaintiffs failed to exhaust the Grievance Procedure.  (Doc. 37, pp. 22-26.)  Regarding Plaintiff Jones' appeal with Entry ID 248051, Plaintiffs claim that the appeal response of "Resolved Substantiated" "indicated that the grievance was addressed on the merits on appeal" and because of this the "procedurally defective grievance properly exhausts a prisoner's claim for purpose of § 1997e(a). (Doc. 37, p. 32.) Plaintiffs conflate the words "grievance" and "appeal" and refer to Jones' appeal as a "grievance" when it is only an **appeal**. Because inmates may "only address one area of concern per Grievance Form" the only topic that could have been addressed in Plaintiff Jones' appeal would have been the topic she first grieved about in her grievance, an issue with texting, and not any new issues raised in her appeal. (Doc. 23-2, p. 4, 8.). Therefore, the response to her appeal only dealt with the one issued on appeal—the texting issue—and this issue is what was

"Resolved Substantiated," as the texting issue was first "Resolved Unsubstantiated". Plaintiff Jones then appealed, and on appeal, the texting issue was "Resolved Substantiated." The new topics found in the appeal could not have been "Resolved Substantiated," as they were outside the topic on appeal, and the purpose of an appeal is to appeal the original grievance and its topics. Any new topics found in the appeal would not have been resolved on the merits, and therefore, Plaintiff Jones has not exhausted the grievance procedure in relation to her allegations in the complaint.

As for Plaintiff Singleton's grievance with Entry ID 243732, Plaintiffs claim that it "was undecided nearly two months after Singleton filed it" is incorrect, as the grievance has been replied to with the language "All issues have been addressed." (Doc. 37, p. 32; Doc. 23-2, p. 18.) Plaintiffs admit this language is found in the reply, but state that the language "meant that Singleton had obtained all the relief that was available and thus was not required to file an appeal." (Doc. 37, p. 32.) This statement is incorrect, because if Plaintiff Singleton did not agree that "[a]ll issues have been addressed" then he would have needed to file an appeal, the choice to not appeal means Plaintiff Singleton failed to exhaust the available administrative remedies.

Regarding Plaintiff Mitchell, Plaintiffs contend "Defendants have not shown that Mitchell was informed of how to file a grievance appeal." However, all inmates are told about the grievance procedure at orientation, and Defendants have produced

Lieutenant Gibson's declaration containing this specific fact. (Doc. 23-2, pp. 1–3.) Further, Plaintiff Mitchell has filed grievances—but failed to exhaust the grievance procedure—thereby showing that the grievance procedure was known, available, and in fact used by Plaintiff Mitchell. (Doc. 23-2, pp. 12–14.) Most importantly, Plaintiff Mitchell is no longer incarcerated at the Jail, as Plaintiffs concede, which "moot[s] his claims" and his claims are no longer at issue. (Doc. 37, p. 11 n. 1.) Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir. 2007) ("[t]he general rule in our circuit is that a transfer or release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief.").[3]

Regarding Plaintiff Watkins, after reviewing the Jail's files for **any** grievances submitted by Plaintiffs, Lieutenant Gibson attached the grievances found through this procedure to his declaration. (Doc. 23-2, ¶ 4.) Plaintiffs seem to take issue with the wording in Lieutenant Gibson's declaration where it states "the grievances I have located," but this issue is immaterial, as the grievance Lieutenant Gibson has located, through his thorough review of the Clayton County Jail files, would be "any grievances submitted by" the Plaintiffs. (Doc. 23-2, ¶ 4; Doc 37, p. 25.) And any of the grievances submitted by the Plaintiffs, including any by Plaintiff Watkins, have

---

[3] See also Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986) ("[i]n view of Zatler's release, we find that his claims for declaratory and injunctive relief are now moot."); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985)("[a]bsent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred.").

been attached to his declaration, with no more or no less. Therefore, an absence of grievances by Plaintiff Watkins means Plaintiff Watkins did not file any grievances during the time of Plaintiff Watkins' incarceration.

Even if this Court were to find Plaintiffs have satisfied the exhaustion requirement, Plaintiffs have only grieved about sanitization of phones, masks, cleaning supplies, disinfectant, and COVID-19 tests. (Doc 23-2, p. 7–26.) Meaning, the Court should limit Plaintiffs' claims only to these specific items of concern brought to the Jail staff's attention. Sylvester v. Chandler, No. 07 C 50050, 2010 U.S. Dist. LEXIS 88683, at *13 (N.D. Ill. Aug. 27, 2010) ("Because the June grievance failed to identify misconduct or describe those who treated him badly, it did not provide the prison with any opportunity to address plaintiff's concern that he was being abused by Dixon nurses. Accordingly, the court finds that plaintiff did not exhaust his remedies with respect to the claims"); see generally Winstead v. Williams, No. CV 617-049, 2018 U.S. Dist. LEXIS 3843, at *10 (S.D. Ga. Jan. 9, 2018).

## D.   Failure to State a Claim Under The ADA or RA

Plaintiffs contend in two pages of their response that they have plausibly alleged violations under the ADA and RA and that "the Jail has made no accommodations for members of the Disability subclasses to reduce their risk of exposure" to COVID-19.  (Doc. 37, pp. 26-27.)  Foremost, Plaintiffs have not

alleged a disability under the ADA or RA.[4] Plaintiffs allege only health conditions—high blood pressure, diabetes, and pulmonary disease—but alleging health conditions is not tantamount to being disabled.  (Doc. 1, ¶¶ 4–7.) "A physical impairment, standing alone, however, is not necessarily a disability as contemplated by the ADA. The ADA requires that the impairment substantially limit one or more of the individual's major life activities." Gordon v. E.L. Hamm & Assocs., 100 F.3d 907, 911 (11th Cir. 1996) (citations omitted); see 42 U.S.C. § 12102(2). Plaintiffs must allege how their health conditions have "substantially limit[ed] one or more of the major life activities of [Plaintiffs]" to bring a claim under the ADA, and Plaintiffs have failed to do so here. 42 U.S.C. § 12102(2). Simply put, merely having a health condition does not mean one is disabled as defined by the ADA, and the failure to properly allege Plaintiffs have disabilities is fatal to bringing an ADA claim. See Greenberg v. BellSouth Telecomms., Inc., 498 F.3d 1258, 1265 (11th Cir. 2007) (holding plaintiff who suffered from diabetes, high blood pressure, and other conditions could not establish he was disabled pursuant to ADA); Swain v. Hillsborough Cty. Sch. Bd., 146 F.3d 855, 858 (11th Cir. 1998) (holding plaintiff who suffered from urinary incontinence and high blood pressure was "not an individual with a disability as defined by the ADA.").

---

[4] "Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases." Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000).

Next, as for Plaintiffs contention that they were not provided accommodations, Plaintiffs do not contend that they made a specific demand for reasonable accommodations, which is fatal to their claim. Rylee v. Chapman, 316 F. App'x 901, 906 (11th Cir. 2009) ("In cases alleging a failure to make reasonable accommodations, the defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a 'specific demand' for an accommodation."). Additionally, Plaintiffs do not allege that Defendants failed to provide Plaintiffs with any reasonable accommodations **by reason of any disabilities**.[5] Therefore, Plaintiffs' ADA and RA claims should be dismissed for these additional reasons.

## E.    **"Unconstitutional Punishment" Claim is Subject to Dismissal**

Plaintiffs contend in their response that the "punishment test" in Bell v. Wolfish, 441 U.S. 520, 535 (1979) and not the Eighth Amendment deliberate indifference analysis "applies when analyzing the condition of Plaintiffs' pretrial confinement." (Doc. 37, pp. 28-29.) Plaintiffs are wrong and are misconstruing the standards under well-established Eleventh Circuit precedent. In Bell, the Supreme Court held that conditions claims brought by pretrial detainees arise under the

---

[5] Plaintiffs claim that the ADA and RA do not require discrimination by a public entity of an individual with a disability by reason of their disability. (Doc. 37, p. 27.) This is incorrect. The Eleventh Circuit recognizes a claim under the ADA and RA when a plaintiff "was 'subjected to discrimination' by a public entity, the [sheriff], **by reason of his disability**." Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1084 (11th Cir. 2007) (emphasis added).

Fourteenth Amendment.  The Eleventh Circuit, however, has held that the decisional law applicable to prison inmates applies equally to pretrial detainees.  Hamm v. DeKalb Cty., 774 F.2d 1567, 1574 (11th Cir. 1985); see also Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996).  As a result, the Eleventh Circuit requires a plaintiff challenging the conditions of confinement to show both that the deprivation suffered was objectively serious and that prison officials were deliberately indifferent to the violation of the plaintiff's constitutional rights. See Evans v. St. Lucie Cty. Jail, 448 F. App'x 971, 973–75 (11th Cir. 2011). See also Swain v. Junior, 958 F.3d 1081 (11th Cir. 2020) ("a pre-trial detainee's rights exist under the due process clause of the Fourteenth Amendment' but 'are subject to the same scrutiny as if they had been brought as deliberate indifference claims under the Eighth Amendment.").  Therefore, Plaintiffs' claim in Count I should be dismissed for failure to state a claim.

**F.    Failure to State a Claim for Habeas Relief Because Claims Relate to Conditions at the Jail and They Failed to Exhaust State Court Remedies**

    **1.    Plaintiffs Are Challenging Conditions of Confinement, Not the Fact or Duration of the Confinement**

Plaintiffs contend in their response that "Defendants have incorrectly framed Plaintiffs' [habeas] claims as challenges to the conditions of confinement." (Doc. 37, p. 30.)  Plaintiffs' complaint, however, poses the situation that COVID-19, and Defendants' alleged deliberate indifference to the virus, has created conditions of

confinement at the Jail that are in violation of the Constitution. (See, e.g., Doc. 1, ¶¶ 110, 111, 152, 154, 156, 178, 209, 213, 214, 236.) Plaintiffs' claims challenge without any question the alleged conditions at the Jail in response to COVID-19, and Plaintiffs cite no law to support their request for a release or transfer order due to COVID-19 related conditions.   To the contrary, binding precedent holds that an inmate cannot challenge his or her conditions of confinement via a habeas petition, period. Nelson v. Campbell, 541 U.S. 637, 643 (2004) ("[C]onstitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core" of habeas relief.); see also Muhammad v. Close, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus, requests for relief turning on circumstances of confinement may be presented in a § 1983 action."); Vaz v. Skinner, 634 F. App'x 778 (11th Cir. 2015) ("Petitioner's § 2241 petition is not the appropriate vehicle for raising an inadequate medical care claim, as such a claim challenges the conditions of confinement, not the fact or duration of that confinement.").

Simply, Plaintiffs are not alleging challenges to "the validity of the sentence itself or the fact of confinement," which would give them a basis for a habeas corpus petition under Bryant v. Warden, 738 F.3d 1253, 1288 (11th Cir. 2013).  This is a

conditions of confinement suit, and as such, Plaintiffs are not entitled to habeas relief.

**2.     Plaintiffs' Habeas Claims Must Be Dismissed Because Plaintiffs Have Not Exhausted Available State Court Remedies**

In their response, Plaintiffs cite <u>Santiago-Lugo v. Warden</u>, 785 F.3d 467 (11th Cir. 2015) and contend that exhaustion of state court remedies is not a requirement to bring a habeas claim. (Doc. 37, pp. 31–32.)  However, <u>Santiago</u>, is inapposite because that case does not deal with the failure to exhaust state court remedies, but rather, with the failure to exhaust **administrative** remedies.

Plaintiffs also claim there is an "absence of a statutorily mandated exhaustion requirement;" however, this is also incorrect. (Doc. 37, p. 32.) <u>See</u> 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."); <u>see also</u> <u>Hughes v. AG of Fla.</u>, 377 F.3d 1258, 1262 n.4 (11th Cir. 2004) ("the exhaustion of state remedies . . . was codified in 28 U.S.C. § 2254(b), but the requirement applies to all habeas corpus actions.").

Plaintiffs next contend that "[t]he circumstances of this case weigh heavily against an exhaustion requirement" and that they should have "prompt access to a federal judicial forum."  (Doc. 37, pp. 32-33.) The Supreme Court, however, has "reiterated that comity was the basis for the exhaustion doctrine: 'it is a principle

controlling all habeas corpus petitions to the federal courts, that those courts will interfere with the administration of justice in the state courts only in rare cases where exceptional circumstances of peculiar urgency are shown to exist.'" Rose v. Lundy, 455 U.S. 509, 515-16 (1982).

Comity is at its greatest here, as "the Supreme Court has cautioned, 'it is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons.'" Woodford v. Ngo, 548 U.S. 81, 94 (2006) (citing Preiser v. Rodriguez, 411 U.S. 475, 491–492 (1973)). As the interest of comity is great, and there is not an exceptional circumstance of peculiar urgency here, as Plaintiffs' own allegations show that there has not been an outbreak of COVID-19 at the Jail and Plaintiffs have not alleged they are safer from COVID-19 outside of the Jail, the exhaustion requirement should be enforced and a state court should have the ability to hear a habeas claim. See Brown v. Plata, 563 U.S. 493, 511 (2011) ("Courts must be sensitive to the State's interest in punishment, deterrence, and rehabilitation, as well as the need for deference to experienced and expert prison administrators faced with the difficult and dangerous task of housing large numbers of convicted criminals."); Powell v. Barrett, 541 F.3d 1298, 1311 (11th Cir. 2008) ("jailers and corrections officials should be accorded wide-ranging deference in the adoption and execution of policies and practices.").

Further, the Supreme Court's opinion in <u>Jacobson v. Massachusetts</u> cautions district courts from usurping state authority to craft measures responsive to a public health emergency. 197 U.S. 11, 39 (1905). Instead, the courts should only interfere when states act in an "arbitrary and oppressive" manner. <u>Jacobson</u>, 197 U.S. at 38; <u>see</u> <u>generally</u> <u>Robinson v. AG</u>, 957 F.3d 1171, 1179 (11th Cir. 2020); <u>Adams &</u> <u>Boyle, P.C. v. Slatery</u>, 956 F.3d 913, 925 (6th Cir. 2020); <u>In re Abbott</u>, 956 F.3d 696, 716 (5th Cir. 2020).

Finally, in <u>Money v. Pritzker,</u> 2020 U.S. Dist. LEXIS 63599 (N.D. Ill. Apr. 10, 2020), for example, the court found that there were "serious separation of powers concerns" inherent in plaintiffs' actions "because running and overseeing prisons is traditionally the province of the executive and legislative branches." <u>Id.</u> at *54. The court explained that the judiciary is "ill-equipped" to manage thousands of inmates, particularly in the context of "an ongoing, fast moving public health emergency." <u>Id.</u> at *55. Finally, turning to the merits of the habeas petition, the court found that the plaintiffs failed to exhaust their remedies as they did not give Illinois state courts a meaningful opportunity to consider their claims before turning to the federal courts for relief. <u>Id.</u> at *68–75. Ultimately, the court denied their habeas petition because "Plaintiffs have not made a satisfactory showing that the state court system was not every bit as available as the federal courts, if not more so." <u>Id.</u> at *74. Therefore, as in <u>Money</u>, Plaintiffs' request for habeas relief should be denied.

**G.**   **Plaintiffs Failed to Follow the PLRA's Required Procedure to Obtain an Inmate Release Order**

Plaintiffs contend in their response that the requirements and limitations on prisoner release orders under 18 U.S.C. § 3636 do not apply to them, including the requirement to empanel a three-judge panel.  (Doc. 37, pp. 34-35.)  Yet, Plaintiffs cite no precedent to support their contention.  Looking to the plain language of 18 U.S.C. § 3626, a prisoner release order "includes **any order**, including a temporary restraining order or preliminary injunctive relief, that **has the purpose or effect of reducing or limiting the prison population**, or that directs the release from or nonadmission of prisoners to a prison." 18 U.S.C. § 3626(g)(4) (emphasis added). In the face of this plain language, Plaintiffs incorrectly state "an order releasing or transferring medically vulnerable detainees to protect them form COVID-19 would not constitute a 'prisoner release order' . . . ." (Doc. 37, p. 35.) Further, Plaintiffs claim in their complaint "[r]elease is needed . . . to reduce the jail's population"— language almost word-for-word the definition of a "prison release order." (Doc. 1, p. 67)

Plaintiffs are seeking release as a remedy for the allegedly unconstitutional conditions at the Jail—either for themselves or others—but the PLRA prevents this Court from granting that relief. Under the PLRA, "[t]he authority to order release of prisoners as a remedy to cure a systemic violation of the Eighth Amendment is a power reserved to a three-judge district court, not a single-judge district court."

- 19 -

Brown, 563 U.S. at 500 (2011) (citing 18 U.S.C. § 3626(a)); see 18 U.S.C. §

3626(a)(3)(B) ("In any civil action in Federal court with respect to prison conditions,

a prisoner release order shall be entered only by a three-judge court[.]").

Additionally, such an order may not be entered unless "(i) a court has previously

entered an order for less intrusive relief that has failed to remedy the deprivation of

the Federal right sought to be remedied through the prisoner release order; and (ii)

the defendant has had a reasonable amount of time to comply with the previous court

orders." 18 U.S.C. § 3626(a)(3)(A). And even a three-judge court may not order

prisoners released to remedy unconstitutional prison conditions until "the court finds

by clear and convincing evidence" that "(i) crowding is the primary cause of the

violation" and "(ii) no other relief will remedy [it.]" 18 U.S.C. § 3626(a)(3)(E)(i)(ii).

Three recent federal COVID-19 inmate cases confirm Defendants' position

on several points and highlight the fatal flaws in Plaintiffs' compliant.

The Illinois district court's decision in Money is the most significant of the

cases, as it analyzed an action practically identical to this one. 2020 U.S. Dist. LEXIS

63599 (N.D. Ill. Apr. 10, 2020).   In Money, ten individuals in various Illinois

Department of Corrections ("IDOC") facilities brought two class action lawsuits

"seeking release of prisoners from IDOC facilities in light of the COVID-19

pandemic." Id. at *7.  One suit was brought under § 1983; the other was a petition

for writs of habeas corpus under 28 U.S.C. § 2254.  As the court summarized: "The

foundation of each suit is essentially the same: Plaintiffs argue that the prison setting makes them (and other purported class members) especially vulnerable to COVID-19, that the state government's responses to the danger are insufficient or not fast enough or both, and that the only way to solve the problem is moving prisoners out of prisons." Id. at *8. Plaintiffs claimed that "reducing the prison population is the only meaningful way to prevent the harms posed by COVID-19 in the prison setting." Id. at *16.

The court found that the plaintiffs' § 1983 claims were subject to the PLRA's limitations. Id. at *32–47. The court analyzed whether the plaintiffs were seeking a "prisoner release order" that would need to be decided by a three-judge panel under the PLRA. Id. During the lawsuit, the plaintiffs walked-back their original request for release and claimed they were now only seeking "a process through which subclass members eligible for medical furlough will be identified and evaluated based on a balancing of public safety and public health needs, and transferred accordingly." Id. at *28–29 (quotations omitted). The court found that even this watered-down request was effectively a request for a prisoner release order as it was intended to further the lawsuits' main purpose—which was to reduce or limit the IDOC's prison population. Id. at *42, 43. The court held that, under the PLRA's specific procedures regarding prisoner release orders and due to the relief being

requested, it could not grant the plaintiffs' § 1983-based request for prisoner release. Id. at *75.

Further, the court found that there were "serious separation of powers concerns" inherent in plaintiffs' actions "because running and overseeing prisons is traditionally the province of the executive and legislative branches." Id. at *54. The court explained that the judiciary is "ill-equipped" to manage thousands of inmates, particularly in the context of "an ongoing, fast moving public health emergency." Id. at *55.

Finally, turning to the merits of the habeas petition, the court found that the plaintiffs failed to exhaust their remedies as they did not give Illinois state courts a meaningful opportunity to consider their claims before turning to the federal courts for relief. Id. at *68–75. Ultimately, the court denied their habeas petition because "Plaintiffs have not made a satisfactory showing that the state court system was not every bit as available as the federal courts, if not more so." Id. at *74.

In the second case, Sacal-Micha v. Longoria, 2020 U.S. Dist. LEXIS 62471 (S.D. Tex. Apr. 9, 2020), the District Court for the Southern District of Texas found that a writ of habeas corpus was not a proper vehicle for challenging an inmate's conditions of confinement due to COVID-19. In Sacal-Micha, the petitioner who filed a habeas petition seeking immediate release was "elderly and has serious underlying medical conditions." Id. at *1. The petitioner sought release due to the

"possibility of a COVID-19 outbreak within the detention center . . . and the Respondents' alleged inability to protect him from contracting the virus or providing him with adequate medical attention." Id. Specifically, the petitioner claimed that the respondents had not implemented sufficient social distancing measures, the universal use of mask and gloves, and various other measures to protect against the spread of COVID-19. Id. at *5.

The court noted that the "'sole function' of a habeas petition is to 'grant relief from unlawful imprisonment or custody'" and that "[d]istrict courts have . . . den[ied] habeas relief based solely on alleged inadequate conditions of detention." Id. at * 7. The court found the petitioner's lawsuit was "[a]t its core" challenging his conditions of confinement and that habeas relief is unavailable in such a suit. Id. at *8. Thus, the court held that the petition should be dismissed under Fed. R. Civ. P. 12(b)(6). Id. at *24.

In a third case, Coleman v. Newsom, 2020 U.S. Dist. LEXIS 62575 (E.D. Cal. Apr. 4, 2020), a three-judge federal court in California clarified how the PLRA's limits applied to COVID-19-based claims for a prisoner release order. The presiding three-judge court was established in 2007 under the PLRA to consider whether a prisoner release was warranted due to structural failures in California's prison system. Id. at *5. Recently, two classes of inmates incarcerated in California state prisons filed a motion asking the court to order the release of a significant number

of prisoners "so that the prison population can be reduced to a level sufficient to allow physical distancing to prevent the spread of COVID-19." Id.

The three-judge court rejected the plaintiffs' motion. Id. at *6. The court noted that the "PLRA places significant restrictions on a federal court's authority to order the release of prisoners as a remedy for a constitutional violation." Id. at *13. The court found that the plaintiffs likely could not satisfy the PLRA's requirements "at this point because there have not yet been any orders requiring Defendants to take measures short of release to address the threat of the virus; nor have Defendants had a reasonable time in which to comply." Id. at *14.

These three cases confirm Defendants' position and highlight the reasons why the relief sought by Plaintiffs should be denied.

## II.    CONCLUSION

For the reasons stated herein, and in Defendants' initial brief, Plaintiffs' complaint should be dismissed.

FREEMAN MATHIS & GARY, LLP

*/s/ A. Ali Sabzevari*
Jack R. Hancock
Georgia Bar No. 322450
jhancock@fmglaw.com
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com
Jacob W. Loken
Georgia Bar No. 200193
jloken@fmglaw.com

- 24 -

*Attorneys for Defendants*

661 Forest Parkway, Suite E
Forest Park, GA  30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to Local Rule 7.1(D), that the foregoing memorandum of law has been prepared in accordance with Local Rule 5.1(C) (Times New Roman font, 14 point).

This 31st day of August, 2020.

FREEMAN MATHIS & GARY, LLP

*/s/ A. Ali Sabzevari*
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com

*Attorney for Defendants*

661 Forest Parkway, Suite E
Forest Park, GA  30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have this day electronically submitted the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF system participants:

Ryan Primerano
Sarah Geraghty
Jeremy Cutting
Southern Center for
Human Rights
60 Walton Street
Atlanta, Georgia 30303
rprimerano@schr.org
sgeraghty@schr.org
ccutting@schr.org

Stephen L. Pevar
American Civil Liberties
Union Foundation
765 Asylum Ave
Hartford, Connecticut 06105
spevar@aclu.org

Kosha S. Tucker
American Civil Liberties Union
Foundation of Georgia
P.O. Box 77208
Atlanta, Georgia 30357
ktucker@acluga.org

Brandon Buskey
Robert W. Hunter
American Civil Liberties
Union Foundation
125 Broad Street
New York, NY 10004
bbuskey@aclu.org

David C. Fathi
American Civil Liberties
Union Foundation
915 Fifteenth Street, Seventh Floor
Washington, DC 20005
dfathi@aclu.org

This 31st day of August, 2020

*/s/ A. Ali Sabzevari*

A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com

*Attorney for Defendants*

FREEMAN MATHIS & GARY, LLP
661 Forest Parkway, Suite E
Forest Park, GA  30297
(404) 366-1000 (telephone)
(404) 361-3223 (facsimile)