# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

RHONDA JONES *et al.*,

    Plaintiffs,

  v.

VICTOR HILL *et al.*,

    Defendants.

NO. 1:20-CV-2791-JPB-CCB

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' OBJECTION AND MOTION TO STRIKE DECLARATIONS OF FRED ROTTNEK, M.D.

On the eve of the December 8, 2020, evidentiary hearing, Defendants moved to exclude Dr. Fred Rottnek's expert declarations (Dkts. 19-3, 78-8)—five months after the initial declaration was filed—arguing that he is "not qualified" to render opinions about managing COVID-19 in correctional institutions and that his opinions and recommendations are not based on "reliable" methodologies. Defendants are wrong and their motion should be denied.

Defendants' attack on Dr. Rottnek's qualifications relies on a self-serving and false characterization of him as no more than a "family" doctor. To the contrary, and as the Defendants well know, Dr. Rottnek has decades of experience developing, supervising, and implementing procedures and policies of jails and

treating detainees in jails. Notably, his experience includes developing and implementing hygiene and cleaning protocols in response to an infectious outbreak similar to COVID-19, and serving as medical director of a detention facility during the ongoing COVID-19 pandemic. It is for these reasons, among others, that two federal district courts have held that Dr. Rottnek is qualified to opine on the adequacy of a detention facility's responses to COVID-19. The same is true here.

Dr. Rottnek's opinions and recommendations are based on reliable methodologies under *Daubert* and Rule 702. Specifically, he relies on his knowledge of and experience with accepted CDC guidance and regulations concerning COVID-19 and infectious diseases. Contrary to Defendants' assertion that he simply parrots CDC guidance, Dr. Rottnek applies his knowledge of those guidelines to his formidable background with detention facilities (including experience responding to infectious outbreaks), analyzes the evidence in this case, and utilizes his firsthand inspection of the Jail, all in support of his conclusions and recommendations. As two federal courts have recognized, his methodology is reliable in conformity with Federal Rule of Evidence 702. Accordingly, the Defendants' motion should be denied.

Furthermore, major components of Dr. Rottnek's testimony are not expert testimony at all, but fact testimony based on his personal firsthand

observations of the Clayton County Jail during the Court-ordered October 4, 2020 inspection (*see*, *e.g.*, Dkt. No. 78-8 at ¶¶ 14-39, 64). These observations should not be disregarded even if the Court were to sustain Defendants' unfounded objections to Dr. Rottnek's expert testimony.

## ARGUMENT

I. **Legal Standard**

Rule 702 authorizes expert testimony by "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education." The Rule permits expert testimony if "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562-63 (11th Cir. 1998) (citing Fed. R. Evid. 702) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). This standard is "a flexible one" and there is no "definitive checklist or test" for testing expert reliability. *United States v. Brown*, 415 F.3d 1257, 1267 (11th Cir. 2005).

This threshold is "even more relaxed in a bench trial situation, where the judge is serving as factfinder." *O'Halloran v. Harris Corp. (In re Teltronics, Inc.)*, 904 F.3d 1303, 1311-12 (11th Cir. 2018) (quoting *Brown*, 415 F.3d at 1268). This is because one of the principal purposes of Rule 702 is to ensure that jurors are not misled by placing too much weight on the credentials of an expert. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) ("District courts are charged with this gatekeeping function to 'ensure that speculative, unreliable expert testimony does not reach the jury' under the mantle of reliability that accompanies the appellation 'expert testimony.'") (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)); *Brown*, 415 F.3d at 1269 ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.").

## II. Dr. Rottnek is Qualified to Testify About the Jail's COVID-19 Response

There is no question that Dr. Rottnek is qualified as an expert in this case. "Rule 702 takes a liberal view of expert witness qualifications; thus, an expert's training does not always need to be narrowly tailored to match the exact point of dispute in a case." *Fox v. General Motors, LLC*, No. 1:17-CV-209-MHC, 2019 WL 3483171, at *28 (N.D. Ga. Feb. 4, 2019) (quoting *Haines v. Webb*, No. 1:13-CV-1783-AT, 2014 WL 12828962, at *10 (N.D. Ga. Sept. 26, 2014)).

4

Dr. Rottnek's experience and expertise is closely tailored to the issue presented here, far surpassing the liberal threshold of Rule 702. In addition to his board certifications in Family Medicine and Addiction Medicine, Dr. Rottnek is a Certified Correctional Health Care Physician through the National Commission on Correctional Health Care, which shows he possesses a "demonstrated understanding of the medical needs of the inmate population" and "knowledge of the unique challenges, legal context and policies and procedures specific to physicians practicing in a correctional environment." (Doc. 19-3. ¶ 2 & n.1 (quoting National Commission on Correctional Health Care, CCHP-P Certification, https:www.ncchc.org/cchp-p)). Currently, he is the Medical Director of Family Courts and Juvenile Detention for the 22nd Judicial Court of St. Louis, where he is leading efforts to modernize and enhance services in Juvenile Detention. (*See id.* ¶ 8). Before that, for 15 years, he was the lead physician and medical director at the Saint Louis County Jail. (*See id.* ¶ 4). In this capacity, Dr. Rottnek directed the medical care of an incarcerated population ranging from 900 to 1,400 detainees and oversaw the intake of between 30,000 to 34,000 arrestees. (*See id.* ¶ 5). Dr. Rottnek also developed policies for custody of medically vulnerable detainees, and hygiene and cleaning protocols during the early 2000's outbreak of methicillin-resistant staphylococcus aureus ("MRSA"), an antibiotic-

5

resistant strain of bacteria that, like COVID-19, can live on surfaces for days and can remain undetected in hosts. (*See id.* ¶ 6.) Incredibly, the Defendants' motion ignores this highly relevant expertise and instead misleadingly tries to pigeonhole Dr. Rottnek as only a "family" doctor. (Mot. at 6.)

Defendants also contend that, "[f]or Rottnek to opine on COVID-19 and prevention, he would at the very least need to be an epidemiologist, an infectious disease doctor, possess certification in immunology or infectious disease, or practice in the field." (*Id*. at 7). As a preliminary matter, Defendants propose a threshold that their own expert, Dr. Charles V. Clopton, cannot meet. (*See* Doc. 41-3 at 2 (noting Dr. Clopton's residencies in pathology and family medicine, but no board certification of any kind and no specialization in epidemiology, immunology or infectious diseases)).

Defendants' purported threshold is also wrong. It is well-settled that a "proffered physician need not be a specialist in the particular medical discipline to render expert testimony relating to that discipline." *United States v. Ruan*, 966 F.3d 1101, 1162 (11th Cir. 2020) (emphasis added) (collecting cases) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1297 (11th Cir. 2004)). Indeed, courts often find that a physician in general practice is competent to testify about problems that a medical specialist typically treats. *See, e.g.*, *Doe v. Cutter Bio., Inc., a Div. of*

6

*Miles Labs., Inc.*, 971 F.2d 375, 385 (9th Cir. 1992) (holding that the district court abused its discretion in excluding expert affidavits because the experts were not a licensed hematologists, and noting that "[o]rdinarily, courts impose no requirement that an expert be a specialist in a given field"); *Dean v. United States,* Case No. 19-10210, 2020 WL 3412264, at *7 (E.D. Mich. June22, 2020) (finding that physician's "lack of training in neurological surgery or related fields is not an obstacle to admission of his medical opinion that was based on general principles of diagnosis and treatment of conditions within his usual practice").[1]

---

[1] None of Defendants' cited cases support disqualifying Dr. Rottnek as an expert here. All but one of the cases involved jury trials and required a heightened *Daubert* gatekeeping function not applicable here. In *Brown*, the only bench trial case relied on by Defendants, the Eleventh Circuit merely held that the District Court had not abused its discretion by considering the Defendants' expert testimony at trial but ruling after the trial that the witness did not qualify as an expert. *See United States v. Brown*, 415 F.3d 1257, 1267 (11th Cir. 2005). Furthermore, the problem with the defendants' expert was not – as the Defendants here insinuate – that he lacked sufficiently specialized training in a particular subfield; his testimony was marred by much more extensive deficiencies. *See id.* at 1269 (where the issue was whether a particular chemical compound was an analogue to a controlled substance, it was not an abuse of discretion to reject a proffered expert where his "academic work and professional experience related more to plant pathology and botany than to chemistry," he did not have "a license to work with controlled substances," and his "methodology" for analyzing the structure of the chemical at issue "was unreliable because it produces 'skewed' and 'bizarre and curious' results"). Defendants' remaining cases are likewise unavailing, because the proposed experts there had no relevant knowledge. In *Wheeling Pittsburgh Steel Corp. v. Beeiman River Terminals, Inc.*, a "hydrologist" was not competent to testify about "safe warehousing practices." 254 F.3d 706, 715 (11th Cir. 2001). In *Redman v. John D. Brush & Co.*, a metallurgist was not

7

In particular, there is precedent in this Circuit that non-specialists may qualify as experts in topics relating to infectious diseases. *See, e.g.*, *Brown v. Bray & Gillespie III Mgmt. LLC*, No. 6:06-cv-661-Orl-22GJK, 2008 WL 2397601, at *3 (M.D. Fla. June10, 2008) ("mechanical engineer" who "advised numerous businesses" on the "detection and control" of *Legionella*, the bacteria that causes Legionnaire's Disease, was "qualified to testify as to the conditions in indoor pools and spas that affect the growth of *Legionella* bacteria" notwithstanding lack of training as a "microbiologist or epidemiologist").

To this end, in June 2020, Dr. Rottnek was himself deemed qualified — over the opposing parties' objections — by a federal district court as an expert on managing COVID-19 in a prison setting. *See Belton, Jr., et al. v. E. Baton Rouge Parish Prison, et al.*, Case 3:20-cv-00278-BAJ-SDJ, Doc. 84 (Tr. of Evidentiary Hr.), at 98:18-22 (M.D. La. June18, 2020). And in September 2020, he was appointed by the United States District Court for the District of Maryland "as an independent expert" to "conduct[] a review" of county jails used by Immigration

---

qualified to testify about the manufacture of safes because "he was not personally familiar with the standards and rating systems … used in the safe industry." 111 F.3d 1174, 1179 (4th Cir. 1997). And in *Wright v. Case Corp.*, a mechanical engineer was not qualified because he had "very little experience with the type of machinery at issue," and had made no "serious effort to gain expertise" since his retention for the lawsuit. No. Civ A. 1:03CV1618-JEC, 2006 WL 278384, at *3 (N.D. Ga. Feb. 1, 2006).

8

and Customs Enforcement (ICE) as detention facilities and ICE's "policies and practices in response to the COVID-19 pandemic, as well as the existing conditions at [the] facilities." *Coreas v. Bounds,* Civil Action Nos. TDC-20-0780, TDC-20-1304, 2020 WL 5593338, at *3 (D. Md. Sept. 18, 2020).

In sum, Dr. Rottnek's medical background, knowledge of and experience with CDC guidelines for detention facilities, certification as a Correctional Health Care Physician, and decades of experience directing healthcare for detainees (including developing and implementing protocols to manage and contain infectious diseases) amply qualify him as an expert on the (in)adequacy of Defendants' COVID-19 practices. Indeed, there are relatively few people in the country who have more experience than Dr. Rottnek in managing and administering medical care for detainees in county facilities. Defendants' motion should be denied.

## III. Dr. Rottnek's Methodology is Reliable

Dr. Rottnek's methodology is reliable under *Daubert*. Dr. Rottnek's analysis and his conclusion that the Jail has "taken little meaningful action to prevent the spread of COVID-19" (Doc. 19-3 ¶ 13); *see also* Doc. 77-7 ¶ 39), are based on:

1. guidance from and experience with the CDC, National Commission on Correctional Healthcare ("NCCHC"), and National Institute of Corrections ("NIC");

2. decades of experience working as a doctor within jails, including with how to address the outbreak of infectious diseases within such facilities;

3. a firsthand inspection of the Jail on October 4, 2020; and

4. the review of Defendants' discovery responses and email communications; the declarations of Edward Sweeney and Dr. Charles V. Clopton; and the declarations of currently or recently incarcerated detainees in the Jail.

(*See id.* ¶¶ 11-12; Doc. 78-8 ¶¶ 3, 13). Based on his vast experience working in and supervising medical care at jails and his knowledge of and experience applying the CDC guidelines for detention facilities, Dr. Rottnek applied specific CDC guidelines to conditions at the Jail to reach his opinions and recommendations. (*See, e.g.*, Doc. 19-3 ¶¶ 40, 74 (recommending that the Jail create and disseminate institution-specific COVID-19 policies and procedures, as suggested by the CDC, to ensure education about the disease and accurate reporting of symptoms)). Relying on widely accepted and available CDC and correctional guidelines, all of which can be readily tested, is a reliable methodology. Indeed, these guidelines are used nationwide to ensure detainee health and safety. *See*, *e.g.*, National Commission on Correctional Healthcare, *Coronavirus: What You Need to Know in Corrections*, https://www.ncchc.org/COVID-Resources (last visited Dec. 11, 2020).

Defendants' objection to Dr. Rottnek relies heavily on the exclusion of Dr. Rottnek's expert opinion in a Michigan state court case in which the plaintiffs, detainees of Wayne County Jail, sought a Temporary Restraining Order due to the spread of COVID-19 at the jail. *See* Opinion and Order, *Wayne County Jail Inmates v. Lucas*, 71-173217 (June 16, 2020). There, the court excluded Dr. Rottnek's opinion principally because it found that Dr. Rottnek's recommendations merely "mirror the guidance and recommendations of the [CDC]." *Id.* at 9.

The *Wayne County* court erred in reaching that decision because that finding, even if it were factually correct, is not a ground to deny qualifying Dr. Rottnek as an expert. In any event, in this case Dr. Rottnek is not merely repeating CDC guidance and recommendations. Rather, he is applying his knowledge of and experience with those guidelines in the correctional facility context. And it is precisely Dr. Rottnek's understanding of CDC guidelines and his particularized knowledge of how to *apply* those guidelines to detention settings that make Dr. Rottnek's methodology reliable and his testimony helpful to the Court. As the Court highlighted in *Coreas*, Dr. Rottnek's reliance on CDC guidelines does not undermine, but in fact supports, his qualification as an expert:

> On July 17, 2020, with the agreement of the parties, the Court appointed Dr. Fred Rottnek, Professor and Director of Community Medicine at Saint Louis University and the former Medical Director and Lead Physician for the Corrections Medicine Division of the Saint Louis County Department of

11

> Health, as an independent expert charged with conducting a review of the Detention Facilities' policies and practices in response to the COVID-19 pandemic, as well as the existing conditions at both facilities . . . **As to standards of evaluation, he relied primarily on the Centers for Disease Control and Prevention ("CDC") Interim Guidance on the Management of Coronavirus Disease 201 (COVID-10) in Correctional Detention Facilities,** as well as on several other resources discussing COVID-19 management in general and COVID-19 management in correctional facilities in particular.

2020 WL 5593338, at *3 (emphasis added). Faced with a new deadly disease that scientists continue to study and learn about, the CDC guidelines are the best available guidance for understanding and addressing this novel coronavirus. *See Brown v. Azar*, Civil Action No. 1:20-CV-03702-JPB, 2020 WL 6364310, at *13 (N.D. Ga. Oct. 29, 2020) (finding that the CDC engaged in "reasoned decisionmaking" in implementing a moratorium on evictions) (internal quotations omitted) (Boulee, J.).

As this Court recently held: "the evidence shows that the transmission rates [of COVID-19] will increase if people are forced to live in congregate settings." *Id.* at *12. The testimony of Dr. Rottnek — an expert in correctional healthcare with firsthand experience in infectious disease management, hygiene, and cleaning protocols in jails — is reliable and will help the Court understand what steps should be taken to mitigate this threat.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Defendants' objection and motion to strike Dr. Rottnek's declarations.

Respectfully submitted,

/s/ Andres Lopez-Delgado
Andres Lopez-Delgado
Ga. Bar No. 552876
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF GEORGIA
P.O. Box 77208
Atlanta, GA 30357
(770) 666-3300
adelgado@acluga.org

Stephen L. Pevar
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
765 Asylum Avenue
Hartford, Connecticut 06105
(860) 570-9830
spevar@aclu.org

David C. Fathi*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 Fifteenth Street, N.W., Seventh Floor
Washington, DC 20005
(202) 548-6603
dfathi@aclu.org
*Not admitted in DC; practice limited to federal courts

Sarah Geraghty
Ga. Bar No. 291393
L. Joseph Loveland
Ga. Bar No. 459350
Jeremy Cutting
Ga. Bar No. 947729
Ryan Primerano
Ga. Bar No. 404962
SOUTHERN CENTER
FOR HUMAN RIGHTS
60 Walton Street, N.W.
Atlanta, GA 30303
(404) 688-1202
sgeraghty@schr.org

Brandon Buskey
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street
New York, NY 10004
(212) 284-7364
bbuskey@aclu.org

*Counsel for Plaintiffs*

December 11, 2020

## CERTIFICATE OF COMPLIANCE

I certify that this document has been prepared in compliance with Local Rule 5.1C using 14-point Times New Roman font.

                                                   /s/Andres Lopez-Delgado

December 11, 2020

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing using the Court's CM/ECF system, which will send notification of filing to all counsel of record.

/s/Andres Lopez-Delgado

December 11, 2020