## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RHONDA JONES *et al.*,

        Plaintiffs,

   v.

VICTOR HILL *et al.*,

        Defendants.

CIVIL ACTION

NO. 1:20-CV-2791-JPB-CCB

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
## FOR ORDER REGARDING CLASS COMMUNICATIONS

As a result of Defendants' blanket ban on detainees' possession of pens, class counsel remain unable to effectively communicate with members of the plaintiff class. The ban hinders class counsel's ability to fairly and adequately represent the class, and it is unreasonable and inconsistent with accepted practices in managing correctional facilities. An order under Rule 23 is urgently needed to restore class members' access to pens and class counsel's access to their clients.

## ARGUMENT

**I.    The Court Has the Authority to Order Defendants to Restore Class Members' Access to Pens.**

Defendants argue that the Court cannot even address Plaintiffs' motion because it lacks the authority "to enter an order changing the manner by which

pens are made available at the CCJ." (Doc. 157 at 7.) They are wrong. District courts have well-established authority under Rule 23 to protect the fair and efficient conduct of a class action by entering orders "governing the conduct of counsel and parties."[1] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). (*See also* Doc. 151 at 7-8.) Rule 23(d) orders regarding class communications are commonly issued where, as here, a party "undermine[s] class plaintiffs' cooperation with or confidence in class counsel." *In re Sch. Asbestos Litig.*, 842 F.2d 671, 682 (3d Cir. 1988) (collecting cases).

Defendants do not provide any support for the contention that the Court lacks authority to issue the requested order. Defendants instead attempt to distinguish this case from *Peoples v. Wainwright*, 325 F. Supp. 402 (M.D. Fla. 1971), arguing that *Peoples* is supposedly inapposite because it concerns interference with prisoners' mail rather than with their pens. (Doc. 157 at 8.) But that purported factual distinction falls apart on the slightest inspection. Indeed, if anything, the facts of the pen ban present an even stronger need for an order under Rule 23 than those in *Peoples*.

In *Peoples*, plaintiffs incarcerated in Florida State Prison alleged that the

---

[1] Rule 23(d) does not require a finding of actual harm to justify an order; it authorizes the imposition of a restricting order to guard against the "likelihood of serious abuses." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104 (1981).

prison's policy of opening and reading legal mail "for security purposes"

"foreclosed effective attorney-client communication" and therefore "seriously

impaired" their ability to prosecute the case. *Id.* at 403. Judge Tjoflat agreed and

concluded that interference with class members' mail was "a proper matter" for a

remedial order under Rule 23(d):

> It has long been recognized that a Court has the inherent power to enter
> such Orders as may be necessary to the proper administration of the
> litigation before it. This concept is embodied in Rule 23(d), Federal
> Rules of Civil Procedure, which provides, inter alia, that the Court, in
> class actions such as these, "may make appropriate orders: (1)
> determining the course of proceedings * * * (3) imposing conditions on
> the representative parties * * * (and) (5) dealing with similar procedural
> matters." It would appear that attorney-client communication by mail,
> under the circumstances present in these cases, is a proper matter for
> such administrative regulation by this Court.

*Id.* Judge Tjoflat thus relied on the authority "embodied in Rule 23(d)" to enjoin

the defendant prison officials from continuing to censor prisoner-counsel

correspondence. *Id.*

A similar order, based on the same well-established authority, is warranted

here. Defendants' pen ban has severely limited, if not completely eliminated, class

members' ability to write and send legal mail. (S.A. Decl. ¶ 6; R.K. Decl. ¶ 9;

J.W. 2d. Decl. ¶ 6; A.H. Decl. ¶ 6; M.J. Decl. ¶ 8; R.G. Decl. ¶ 6; D.S. Decl. ¶ 7.)

This severe burden on class members' ability to communicate with counsel is

greater than the mail searches that Judge Tjoflat found to warrant a remedial order

in *Peoples*. Thus, *Peoples* demonstrates the urgency of an order restoring class members' access to pens.[2]

Defendants cannot diminish this Court's authority by reframing their ban on pens as a "local government policy decision." (Doc. 157 at 7.) The Court's "duty and authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties" applies no less to a policy enacted by a defendant correctional official. *Gulf Oil Co.*, 452 U.S. 89, 100 (1981); *Peoples*, 325 F. Supp. At 403 (ordering prison officials to cease a prison mail policy). This Court has the authority under Rule 23 to issue the requested order.[3]

---

[2] Defendants object to the relevance of cases discussing censorship of legal mail throughout their response. (*See e.g.*, Doc. 157 at 9-10.) However, the relevance is clear. If merely reading a detainee's legal mail is unconstitutional interference, stopping him from sending legal mail altogether is *a fortiori* unlawful as well.

[3] Defendants also claim that, because Plaintiffs' motion raises constitutional issues not brought in their complaint, "the Court need not and should not reach the issue of whether the pen policy has violated anyone's constitutional rights." (Doc. 157 at 12.) Defendants misapprehend Plaintiffs' motion. Plaintiffs seek an order under Rule 23. An order is appropriate based solely on Defendants' obstruction of Plaintiffs' attorney-client relationship. (Doc. 151 at 9-12.) However, Plaintiffs' constitutional claims (*id.* at 12-25) further demonstrate why an order is appropriate. (*See id.* at 9 ("For each of these reasons, an order is necessary to restore detained class members' access to pens.").) To the extent Defendants argue that the Court *cannot* consider ongoing constitutional violations as additional reasons for an order, they are incorrect. A court may issue a Rule 23 order wherever it finds it "appropriate," *Gulf Oil Co.*, 452 U.S. at 100, and protecting the constitutional rights of class members and class counsel would certainly provide a more than "appropriate" basis for a remedial order.

## II.    Defendants' Pen Ban is Unprecedented, Unworkable, and Unnecessary.

Defendants do not dispute that they have enacted an unprecedented ban on detainee possession of pens, and cannot dispute that this new bar was adopted almost immediately after class counsel sent a questionnaire to the detainees as class members.  They also have not shown that the ban is necessary or even rational.  Lastly, they have not rebutted the strong inference that the ban is motivated by a desire to retaliate.

### A.    Defendants Do Not Dispute Most of Plaintiffs' Factual Claims.

Defendants admit that, shortly after the Court certified this case as a class action and class counsel began communicating with a large number of class members by mail, they decided to abandon the jail's longstanding policy of allowing detainees to purchase and possess pens in favor of "a jail-wide ban on inmate possession of pens."  (Doc. 157 at 14, 22.)  They do not dispute that there is no precedent for this break from the jail's prior policy.  Nor do Defendants allege that the flexible pens they banned have actually been used as weapons.  They also do not contest that the jail already has a system for restricting individual detainees from possessing certain potentially harmful items.  These concessions alone establish the need for an order under Rule 23.

**B.      Defendants' Suggestion That Class Members Have Reasonable Access to Pens is Contradicted by the Evidence.**

Defendants assert that an order is unnecessary because detained class members can allegedly obtain pens by asking an officer.  (Doc. 157 at 2-3.)  They base this claim on a conclusory, self-serving declaration from the jail administrator[4] and two examples of documents apparently written in pen.  (Doc. 157-1.)  This does not come close to disproving Plaintiffs' evidence of numerous detainees being refused access to pens, and certainly does not match up with Defendants' assertion that "all inmates have access to pens upon request."  (Doc. 157 at 2.)  Indeed, the sum of the evidence shows that class members cannot get pens by asking and thus cannot write and send mail.

Defendant Allen asserts only "officers *should* not refuse an inmate's request to use a pen."  (Doc. 157-1 at 5 (emphasis added).)  Allen also says that "[n]o inmate or correctional officer has brought to my attention any instances where an inmate has asked for a pen and has been denied same." (*Id.* at 6.)  But the record evidence shows multiple attempts to do just that.  As one class member, B.W.,

---

[4] Plaintiffs' complaint named Defendant Terrance Gibson "in his official capacity as Jail Administrator."  (Doc. 1 at 12.)  Levon Allen was thus automatically substituted into the lawsuit as a defendant when he took the "jail administrator" position on January 1, 2021.  (Doc. 157-1 at 1); Fed. R. Civ. P. 25(d).

described in a grievance:

> On March the 7th 2021 officer Wyatt came in housing unit 8 and took all our pens. Which by federal guide lines we are required to write leg[a]l mail and us federal mail. The Clayton county is denying all writing utensils and *some officers say get it from the control booth but the officer are denying us writing ut[e]nsils as[ ]well.* This is not helpful to my situation due to crim[i]nal and civil cases that I have pending in the United State dis[tric]t court which everything is a tim[e]ly matter with these courts

(Ex. B, Pen Grievances at 4 (emphasis added).)  Another class member in a

different housing unit, T.H., described the same inability to get a pen:

> during the last shakedown all ink pens purchased at the inmate commissary were confiscated, however we were informed that a ink pen would provided by the dorm officer for inmate use upon asking for one from the dorm officer[. *I] have requested use of a ink pen on multiple occas[]ions since the shake down but have yet to rec[ei]ve use of one,* thus leaving me unable to write up legal work and forms needed in my defence on my case, also thus preventing me and all other inmates from being able to communicate by U.S. MAIL with courts ,government offices and offic[ia]ls, as well as family and friends .this results in my and all other inmates constitutional rights for use of U.S. mail services ,as well as causing monetary losses for mail supplies purchased by inmates from commissary here at the clayton county jail.

(*Id.* at 5 (emphasis added).)  Allen continues on to allege that any detainee who is

denied a pen "can submit a grievance and their complaint will be addressed."

(Doc. 157-1 at 6.)  Yet record evidence shows that when detainees complain of

officers' refusal to give them pens, their complaints are not "addressed"; rather,

they are simply told to ask again.  (Ex. B., Pen Grievances.)

To support their argument that "pens are available to all inmates," Defendants lean heavily on thin anecdotal accounts in which two detainees were able to gain temporary access to pens. (Doc. 157 at 2-3.) Of course, these accounts do not disprove Plaintiffs' assertions, and Defendants cannot confirm whether the two detainees even obtained the pens in question from an officer or instead paid money to use a yet-unconfiscated pen that remains in circulation. Critically, two anecdotal accounts cannot possibly demonstrate that access to pens is consistent or widespread. In fact, as Plaintiffs have shown, nearly all the evidence points to the contrary.

Plaintiffs have presented numerous consistent accounts that, no matter the jail's alleged protocol, as a matter of practice, officers refuse to provide pens to class members who request them, preventing class members from accessing the outgoing mail system.[5] (S.A. Decl. ¶ 6; R.K. Decl. ¶ 9; J.W. 2d. Decl. ¶ 6; A.H. Decl. ¶ 6; M.J. Decl. ¶ 8; R.G. Decl. ¶ 6; D.S. ¶ 7.) These declarations are further

---

[5] Throughout their response, Defendants argue that Plaintiffs' arguments concerning detainees' First Amendment right to send legal mail are inapplicable because "Plaintiffs have not submitted a single declaration to show that they do not have access to the mail system at the CCJ." (Doc. 157 at 8.) In fact, that is precisely what Plaintiffs' declarations describe. (*E.g.*, S.A. Decl. ¶ 6 ("Because of this new prohibition on pens, I have not been able to communicate with my lawyers by mail.")). The ability to send written mail is, of course, useless if one does not have access to a writing implement. Defendants do not suggest otherwise.

supported by class members' own grievances produced by Defendants in
discovery. (Ex. B, Pen Grievances.) Defendants have not rebutted Plaintiffs'
evidence that class members do not receive reasonable access to pens.

### C. Defendants Have Not Shown That the Ban Is Rational.

Nor have Defendants shown that a ban on detainees' possession of pens is a
rational response to legitimate concerns, much less a narrowly tailored one. (Doc.
151 at 12-21.) Indeed, "the logical connection" between Defendants' sweeping
ban of flexible pens that have been available for years and their asserted goal of
institutional safety "is so remote as to render the policy arbitrary or irrational."
*Turner v. Safley*, 482 U.S. 78, 89-90 (1987).

Even if Defendants were correct that detainees can obtain pens by request
(they are not), a blanket ban on detainees' possession of pens is completely without
precedent. Before this restriction, class members in the jail had never experienced
a restriction on their access to pens. (A.H. Decl. ¶ 7; S.A. Decl. ¶ 7.) In fact,
Defendants' ban on pens is completely unheard of in correctional practice. Emmitt
Sparkman, a former prison warden and superintendent with 46 years of
correctional experience across facilities in Texas, Mississippi, and Kentucky, states
that "every correctional and jail facility I know of, other than the Clayton County
Jail currently, allows prisoners and detainees generally to possess pens or pencils

in their cells." (Ex. A, Decl. of Emmitt Sparkman ¶ 19.)

There is good reason a blanket pen ban cannot be found elsewhere—it cannot be justified by a safety rationale. The flexible pens confiscated by jail staff were designed to be safe in jail settings. (*Id.* ¶ 20.) For this reason, they are used widely in jails and prisons to promote security. (*Id.*) "Even in high security restrictive housing units that hold the most violent or difficult prisoners," states Mr. Sparkman, "every facility I have worked in has allowed prisoners generally to possess flexible pens or short pencils, with no detrimental impact on security or orderly operations." (*Id.* ¶ 21.) In his experience, "flexible pens do not present a sufficiently serious security risk to justify a blanket ban on prisoners or detainees possessing them." (*Id.* ¶ 22.)

Less restrictive alternatives to a blanket ban exist, and Defendants do not show why they are unworkable. Defendants suggest individualized restrictions on pens are not feasible because they "would not completely eliminate the institutional and safety threat posed by pens" (Doc. 157 at 15), but using individual disciplinary sanctions to deter the misuse of pens would accomplish the same desired result without unduly burdening class members' ability to communicate with class counsel. (Sparkman Decl. ¶ 23.) The jail already applies an individualized approach to detainees' use of razors, permitting disciplinary

sanctions and increased supervision if detainees misuse their issued razors.  (Doc.

151-5.)  Defendants do not dispute they could adopt that same system for pens.

Detainees' jail pens "are no more useful as weapons than many other items

commonly distributed to detainees such as eating utensils, safety razors, and

toothbrushes."  (Sparkman Decl. ¶ 22.)  Moreover, detainees' possession of pens

implicates substantial First Amendment interests not at issue when a jail regulates

access to, for example, razors and plastic spoons.  Defendants have not shown that

invading the rights of every detainee in the jail by seizing flexible plastic pens is a

rational response to a legitimate governmental interest.[6]

### D.    Defendants Have Not Rebutted the Inference of Retaliation.

Plaintiffs' motion outlined why Defendants' ban constitutes unlawful

---

[6] Even if pens were available to detainees upon request, Defendants' new policy
would still present burdens that warrant an order under Rule 23.  According to
Defendants, under their new policy class members may only use pens when an
officer is "able to assist" and "monitor" them in the day room.  (*See, e.g.*, Pen
Grievances at 2 ("[A]ll pens will remain in the housing officer tower and only
issued for out for use while being monitored by the housing officer."); *id.* at 5 ("IN
THE EVENT YOU NEED TO USE A PEN, AND THE OFFICER IS ABLE TO
ASSIST YOU WITH ONE AND HAVE THE ABILITY TO MONITOR YOU AT
THAT TIME WITH THE PEN, YOU WILL BE ABLE TO.").)  Defendants'
stated policy "is inadequate for the further reason that it fails to ensure that
detainees will be able to maintain confidentiality of their communications when
they use the pens for legal communications."  (Sparkman Decl. ¶ 24.)  It does not
allow for effective attorney-client communication and unconstitutionally chills
class members' ability to exercise their right to send confidential legal mail.

retaliation, namely that, shortly after class counsel began corresponding with class members by legal mail, Defendants enacted an unprecedented restriction on pens which cut off class members' ability to send mail. The inference of unlawful retaliation for this suit is unavoidable. (Doc. 151 at 22-25.) Defendants fail to rebut that conclusion.

Defendants state that their actions were not retaliatory but were a coincidental part of efforts to "shank-proof" the jail. (Doc. 157 at 21.) In his statement, Defendant Allen asserts that his decision to suddenly enact the pen ban "was not retaliatory in any way." (Doc. 157-1 at 4.) However, Defendant Allen's assertions are entirely conclusory, and Defendants provide no plausible evidence of flexible pens actually being used as weapons or any evidence that the decision to ban pens predated the arrival of class counsel's mailing at the jail.

Moreover, Defendants do not support their stated justification for the ban, thus leaving in place the strong inference that it is pretextual. Defendants allege that they banned pens because Defendant Allen "spearheaded an internal review" and "identified that inmates at the CCJ were altering or manipulating pens to create weapons." (Doc. 157 at 21.) Given Defendants' purported justification for the ban, one would expect them to, at minimum, produce documents from this "internal review" and evidence of the so-called weapons and injuries that formed

12

the basis for the ban.  Defendants offer nothing of the sort.  Defendants' only

showing is a grainy photo of several pens they claim are weapons[7] confiscated on

March 11, *after* the March 9 decision to ban pens had already been reached.  (Doc.

157-1 at 16.)  Defendants have produced no evidence of specific incidents to

support their claim that safety concerns *precipitated* the change.  This glaring

absence is little surprise, as Defendants' purported "safety" justification is

inconsistent with the minimal threat posed by flexible jail-safe pens, *see* Part II(C),

*supra*, suggesting it is merely a pretext for shutting down mail communications.

Defendants' failure to provide any evidence of why a "jail-wide ban on inmate

possession of pens at the CCJ" was necessary yields the conclusion that their

actions were retaliatory.[8]

## III.    The Court Should Enter an Order Restoring Access to Pens.

"[T]he Court bears the responsibility under Rule 23(d) to preserve the

---

[7] Defendants contend that these pens have been modified into weapons, but that is
far from clear from the photo.  Just as likely, it would seem, is that some detainees
wrap paper around the "thin, wobbly, plastic ink tubes" to allow them to write more
easily.  (R.K. Decl. ¶ 5.)  Otherwise, "[t]he pens are so flexible that you have to hold
them at the very tip in order to write with them."  (*Id.*)

[8] Defendants also assert that their actions have not deterred Plaintiffs from
exercising protected speech.  (Doc. 157 at 22.)  Again, Defendants are mistaken.
Plaintiffs clearly state that Defendants' ban on pens has "eliminated detained class
members' ability to send mail to their attorneys" (Doc. 151 at 25), and the detainee
declarations attached to the motion support that assertion (Doc. 151-2).

integrity of the class action." *A.R. ex rel. Root v. Dudek*, No. 12-60460-CIV, 2013 WL 5278668, at *7 (S.D. Fla. Sept. 19, 2013) (citing *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985)); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). The integrity of a class action is compromised when communication between class counsel and class members is so limited that counsel cannot "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(g)(4). Thus, contrary to Defendants' assertion in their brief, the fact that "this Court has already appointed plaintiffs' counsel as class counsel" (Doc. 157 at 9) does not eliminate the need for ongoing judicial oversight to ensure meaningful and effective communication between class members and their counsel. *See generally W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*, 737 F. App'x 457, 464 (11th Cir. 2018) ("A class action may only be maintained if class counsel 'fairly and adequately represent[s] the interests of the class.'" (quoting Fed. R. Civ. P. 23(g)(4))). Similarly, Defendants assert that Rule 23(g)(4) does not apply to class communications (Doc. 157 at 9), yet they do not dispute, because they cannot, Plaintiffs' arguments that effective communication between class counsel and class members is critical to fair and adequate representation.

Defendants also suggest that the Court should ignore what amounts to a categorical ban on legal mail because detainees can use kiosk emails and telephone

calls to communicate.  (Doc. 157 at 6, 11.)  Yet Defendants have not established that these methods are treated as confidential by jailers.  (*Cf.* Doc. 151-6 (recognizing that legal mail is treated as privileged by jail).)  Thus, mail communication is essential to class counsel's ability to adequately represent a class of this size (Doc. 151 at 2-3), and Defendants' pen ban unlawfully obstructs class counsel's ability to uphold their duty to "fairly and adequately" represent the class.

Defendants' ban on detainees' possession of pens has prevented class members from securely communicating with their attorneys for over three months. The ban obstructs class counsel's ability to fairly and adequately represent the class, violates class members' right to send legal mail, violates class counsel's right to associate with their clients to advance litigation, and constitutes unlawful retaliation against class members and class counsel for their protected speech.  (*Id.* at 8-25.)  For each of these reasons, this Court should enter an order restoring class members' access to pens.

## CONCLUSION

The Court should issue an order under Rule 23(d)(1) and Local Rule 23.1(C) restoring class members' access to pens and class counsel's access to their clients.

Respectfully submitted,

/s/ Jeremy Cutting

Andres M. Lopez-Delgado           L. Joseph Loveland
Ga. Bar No. 552876                Ga. Bar No. 459350
AMERICAN CIVIL LIBERTIES UNION    Jeremy Cutting
FOUNDATION OF GEORGIA             Ga. Bar No. 947729
P.O. Box 77208                    Ryan Primerano
Atlanta, GA 30357                 Ga. Bar No. 404962
(678) 981-5295                    SOUTHERN CENTER
adelgado@acluga.org               FOR HUMAN RIGHTS
                                  60 Walton Street, N.W.
Stephen L. Pevar                  Atlanta, GA 30303
AMERICAN CIVIL LIBERTIES UNION    (404) 688-1202
FOUNDATION                        ccutting@schr.org
765 Asylum Avenue
Hartford, Connecticut 06105       Brandon Buskey
(860) 570-9830                    AMERICAN CIVIL LIBERTIES
spevar@aclu.org                   UNION FOUNDATION
                                  125 Broad Street
David C. Fathi*                   New York, NY 10004
AMERICAN CIVIL LIBERTIES UNION    (212) 284-7364
FOUNDATION                        bbuskey@aclu.org
915 Fifteenth Street, N.W., Seventh Floor
Washington, DC 20005
(202) 548-6603
dfathi@aclu.org

* Not admitted in DC; practice limited to
  federal courts

*Counsel for Plaintiffs*

June 10, 2021

16

## CERTIFICATE OF COMPLIANCE

I certify that this document has been prepared in compliance with Local Rule 5.1C using 14-point Times New Roman font.

/s/ Jeremy Cutting

June 10, 2021

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing using the Court's CM/ECF system, which will send notification of filing to all counsel of record.

/s/ Jeremy Cutting

June 10, 2021